UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>  )<br>  Plaintiff,   )<br>  )<br>v.   )<br>  )<br>  )<br>PATRICK CRUSIUS,   )<br>  )<br>  Defendant.   )<br>  )<br>  ) | Crim. No.  EP-20-CR-0389-DCG |

**REPLY TO GOVERNMENT'S RESPONSE TO PATRICK CRUSIUS'S MOTION TO SET SCHEDULE ENSURING THAT HE RECEIVES EFFECTIVE ASSISTANCE OF DEFENSE COUNSEL WITH RESPECT TO THE QUESTION OF WHETHER THE DEATH PENALTY SHOULD BE SOUGHT**

PATRICK CRUSIUS, by and through his counsel, David A. Lane, hereby files this *REPLY* to the *GOVERNMENT'S RESPONSE* (Doc. 87) to his *MOTION TO SET SCHEDULE ENSURING THAT PATRICK CRUSIUS RECEIVES EFFECTIVE ASSISTANCE OF DEFENSE COUNSEL WITH RESPECT TO THE QUESTION OF WHETHER THE DEATH PENALTY SHOULD BE SOUGHT*.  (Doc. 85).

The Government does not deny that a mitigation investigation has not yet been conducted.  The Government does not deny that the defense is not prepared and cannot effectively represent Mr. Crusius in connection with the Government's July 30th deadline the Government has arbitrarily and capriciously set. The Government asks this Court to

1

shrug its shoulders and embrace a schedule that both parties agree will result in defense counsel's inability to present the Government with mitigation information within the next few days.

This Court does not have to accept the Government's cavalier approach.

Some district courts have granted the relief sought by Mr. Crusius and some have not. The Government cites no binding precedent in this Court barring the relief requested.[1] The Government essentially admits that courts routinely enter scheduling orders setting a date for the presentation of mitigating evidence to the DOJ.[2]

1. The Government cites a handful of cases in which district courts declined to enter a stay of the Government's Capital Review Process. Some of them preceded adoption of the Guidelines for the Administration of the Criminal Justice Act, promulgated by the Judicial Conference. ("CJA Guidelines")(Doc. 085-2), and all preceded COVID-19. Not a single one of them involved a deadly epidemic, widespread stay-at-home orders, and orders from public health officials, Chief Judges, and Governors that have prevented a defense mitigation investigation. Not a single case endorsed setting of the mitigation presentation within less than six months of counsel having received discovery.

---

[1] This Court should wholly reject the Government's quotation to *United States v. Rubio-Rangel*, No. 18-cr-274, Doc. 164 at 1 (S.D. Ga. Oct. 23, 2019) (Doc. 87, pp. 10-11). Doc. 164 is an order partially unsealing a prior order, solely for the purpose of revealing the Order to the attorneys for the Government. The Order otherwise is under seal.

[2] *See, e.g., United States v. McGill*, No. 09-CR-2856-IEG, 2010 WL 1571200, at *3 (S.D. Cal. Apr. 16, 2010)(Doc. 85-8); *United States v. Jameson*, No. 18-CR-245-JED-7, ECF No. 338 (N.D. Okla. Dec. 23, 2019)(Doc. 085-7); *United States v. Benavides and Weber*, 06-cr-62-M-DWM, ECF No. 123 (D.Montana, Oct. 10, 2008)(Doc. 085-6].

2. Counsel actually received usable discovery, in the form of a hard drive, from the Government on February 21, 2020. Within weeks, the COVID pandemic struck and stay-at-home orders were in place.

3. On March 13, 2020 -- the same day that this Court appointed the attorney who will lead Mr. Crusius's mitigation investigation -- the President of the United States declared a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, the Governor of Texas declared COVID-19 to be a disaster under Section 418.014 of the Texas Government Code, and Chief Judge Orlando Garcia issued his first COVID-19 Order, "Order regarding Court Operations under the Exigent Circumstances Created by the COVID-19 Pandemic."  The situation, especially in Texas, has only worsened since then.

4. When it suits the Government, the Government has no compunction against seeking judicial intervention in order to ensure that parties have "appropriate time to investigate aggravating and mitigating factors bearing upon the [Government's] death penalty decision." *United States v. Bush*, No. 3:18-CR-00188-CHB (W.D. Ky.), "Government's Motion to Stay Proceedings and Appoint Counsel" (Doc. 9) (filed Nov. 19, 2018) ("Government's *Bush* Motion") (Exhibit A to this Motion). In its motion in *Bush*, the Government explained the importance of a thorough mitigation investigation that benefits not only the Government in its decision, but also the public, stating:

> The ends of justice require that prosecutors make wise and
> well-informed decisions on whether to seek the death penalty
> to guarantee that this ultimate punishment is used only when
> most appropriate. The Defendants, for obvious reasons, have
> the utmost interest in making sure that the United States does

> not make a hasty decision whether they will seek to have them put to death. . . . The public has a similar interest in protecting against the unwarranted use of capital punishment in its name. The gravity of this decision cautions against a process built for speed rather than for justice.

*United States v. Dominguez-Maqueda,* No. CR 06-86 JB, 2006 WL 1308266, at *5 (D.N.M. 2006), quoted in Government's *Bush* Motion at p. 4. The Government quoted cases acknowledging that the schedule should "enable[ ] the unpressured compilation and submission of mitigating information …. and consideration of such material by the United States Attorney and the Attorney General and their respective committees." *United States v. Jackson*, No. 02 CR 756 (LMM), 2005 WL 323715, at *1 (S.D.N.Y. Feb. 10, 2005) (Government's *Bush* Motion at p. 3). In contrast, here the Government is advocating an unconscionable rush to judgment.

5. The Government's separation-of-powers argument is a red herring. Mr. Crusius is not asking this Court to interfere with the Government's prosecutorial discretion about whether or not to seek the death penalty. As in *United States v. McGill* and the numerous cases in which the district court set a schedule that included the defense mitigation presentation, prosecutorial discretion remains intact. "In issuing a scheduling order, the Court is not granting defendant any new right or invading the province of the Department of Justice to determine, according to its protocol, whether to seek the death penalty in this case." *United States v. McGill*, No. 09-cr-R2856-IEG, 2010 WL 1571200, at *4 (S.D. Cal. Apr. 16, 2010)(Doc. 085-8). *See also, e.g., United States v. Jameson*, No. 18-CR-245-JED-7, Doc. 338 (N.D. Okla. Dec. 23, 2019) (copy of order filed in Mr. Crusius's case as Doc. 085-7). In *Jameson*, El Paso Attorney Joe A. Spencer

represented a client in a case in the Northern District of Oklahoma. *Second Opposed Motion to Amend Scheduling Order to Include Dates for Submitting Mitigating Evidence*. *Id*., Doc. 330. Chief Judge John Dowdell granted Mr. Spencer's motion and observed that the scheduling order did not intervene in DOJ's decision *whether* to seek the death penalty:

> As the government points out, the decision whether to seek the death penalty rests solely within the Executive Branch. (See Doc. 335). But Mr. Jameson is not requesting that the Court intervene in the decision by the DOJ whether to seek the death penalty. … While extending the time for the presentation of his evidence may impact the *timing* of the DOJ's decision, the Court is not intervening in the decision.
> ...
> A court's scheduling of trial and pretrial matters may impact the timing of the DOJ's decision. But that does not interfere in the DOJ's ultimate decision to seek, or not seek, the death penalty.  Notwithstanding the government's arguments, the Court certainly has the power, and the obligation, to enter scheduling orders to govern the progression of criminal proceedings that are initiated by the government in this Court.

*United States v. Jameson*, *supra*, Doc. 338, pp. 1-2 (copy of order filed in Mr. Crusius's case as Doc. 085-7). (emphasis in original).

6.     The Government has not shown how a delay in Mr. Crusius's presentation of mitigation evidence to the U.S. Attorney will hinder its ability to carry out its prosecutorial function. The requested scheduling order would be designed purely to ensure this case proceeds in an orderly and expeditious manner.

7.     It is not true, as the Government suggests (Doc. 87 at 12), that the CJA Guidelines and other protocols are designed to expedite the Government's death penalty at all costs, even without input from the defense because of circumstances out of their

control. As numerous courts (cited *supra*) have observed, both parties and the public benefit from, and are entitled to, a thorough and well-prepared defense mitigation presentation to the U.S. Attorney. That is all Mr. Crusius seeks in these highly unusual and urgent times.

## The Government is Wrong on the Facts

8.      The Government correctly observes that there are many examples of cases in which less than a year passed before the Government filed a NOI. *See* Doc. 87 at 23. There many more situations in which more than one year passed. As the Government is full aware, the average length of time is 12.5 months, which is almost always after the defendant has received discovery (which occurred in this case in February 2020). See "Declaration of Kevin McNally regarding Preparation Time before Meeting with the Attorney General's Capital Case Review Committee," Exhibit B to Mr. Spencer's Motion in the case of *United States v. Jameson, supra*, Doc. 330-2 (filed 11/20/19), which is attached hereto as Exhibit D. In *United States v. Santiago*, No. 1:10-cr-00164-REB (D.Colo.), the NOI (Doc. 291) was filed on March 11, 2011, almost six years after the April 21, 2005 offense;[3] in the case of co-defendants *United States v. Cooya*, Crim. No. 4:08-CR-70-001 (M.D. Pennsylvania), and *United States v. Williams*, No. 4:08-CR-70-002 (M.D. Pennsylvania), the NOI was filed on July 30, 2009, almost four years after the September 28, 2005 offense. *See id.* Docs. 161, 162. In *United States v. Lujan*, No. 05-cr-

---

[3] It is notable that *Santiago* was a prison killing case and the entire incident was videotaped. Thus, this six-year period arose even with relative ease of access to information about the crime -- in contrast to Mr. Crusius's case with an exceptionally complex case, over 40,000 pages of discovery to date, and a deadly pandemic that has paralyzed the country.

924-RB (D.N.M.), the offense occurred on or about March 7, 2005, the initial federal indictment was filed on April 27, 2005, *id.* Doc. 1; and the Notice of Intent to Seek the Death Penalty was not filed until July 12, 2007, *id.* Doc. 146, more than two years later.

9. Unbelievably, the Government prides itself on offering premature, pointless dates at a time when Mr. Crusius had been appointed a single lawyer with no discovery, no mitigation investigators, and no co-counsel. Moreover, most of the Government's "invitations" for defense counsel to present mitigation evidence to the local United States Attorney predate Mr. Crusius's first federal indictment on February 6, 2020, and the superseding indictment filed on July 9, 2020. *See* Doc. 87 at 3-4. The fact that the Government has in the past set wholly unrealistic deadlines does not further its argument that it has been making reasonable overtures to defense counsel to present mitigation evidence. According to the Government's position in its *Bush* Motion, these attempts to schedule a mitigation presentation were premature. As the Government explained in *Bush*:

> The Capital Case Review Process *begins* with appointment of two defense attorneys, at least one of whom must be experienced in the law applicable to capital cases. Defense counsel is *given the opportunity to investigate* and to present to the United States any mitigating factors that may affect the decision whether or not to seek the death penalty. The final decision whether or not to seek the death penalty is reserved exclusively to the Attorney General of the United States.

Exhibit A at p. 2 (emphasis added). Second counsel was not appointed until shortly before Mr. Crusius's first federal indictment on February 6, 2020, and the voluminous federal discovery was not made available until February 14, 2020. Given the recency of

7

these events and the ensuing pandemic situation, the Government's Capital Case Review began prematurely.

10.     The Government does not even attempt to dispute the facts as laid out in Mr. Crusius's motion and in the Declaration of Elizabeth Vertkessian, Ph.D. (Doc. 080-1), which was referenced in Mr. Crusius's motion and attached to Mr. Crusius's Status Report (Doc. 080). The Government does not deny that trying to contact persons through the "alternative means" suggested by the Government is not only unproductive, but also has great potential to *irreparably damage* the mitigation investigation.

11.     Admitting that travel cannot be accomplished at this time, the Government suggests that local attorneys should conduct the mitigation investigation instead of trained mitigation investigators. That suggestion defies logic and flies in the face of the Guidelines that both counsel and Mr. Crusius's mitigation investigators are required to follow. It ignores the fact that people who are potential sources of mitigation information are just as at-risk, just as vulnerable, and just as quarantined as are members of the defense team. It ignores the fact that defense counsel is as unable to travel as the mitigation investigators. Alternatively, the Government suggests that telephonic, video, and other means of electronic communications would be sufficient. Doc. 87 at 21. For support, it points to *United States v. Lujan*, 2011 WL 13210250, *5 (D.N.M. April 25, 2011). An Order denying a motion to strike the notice of intent after the case had been pending for almost five years is very different from the instant motion. In *Lujan*, there was no assertion that investigation had not been able to go forward within the United States; investigation was hampered only in one area of the case, the ability to interview

witnesses in Cd. Juarez, Chih., Mexico. In contrast, Mr. Crusius's defense team is completely hamstrung by the pandemic which prevents not only interstate travel but also safe in-state travel.

12.     The Government's suggestion that local attorneys conduct the mitigation investigation assumes that people who are potential sources of mitigation reside in El Paso, Texas. The Government knows that is not true.

13.     Around the country, the Government itself has taken the position that in-person contacts with its own personnel have not been possible and remain impossible because of the unprecedented COVID-19 pandemic.  *See* Attached Exhibit B to this Reply, Letter from the U.S. Attorney for the Southern District of West Virginia.  In his letter, the U.S. Attorney admonishes opposing counsel's actions in attempting to serve a subpoena on an Agent at his home:  "Such actions jeopardized the health and safety of Agent Cox and his family…[and]...subjected them and the community to an increased risk of COVID-19 transmission [and] undermin[ed] the social distancing order issued by the State of Virginia on March 23, 2020."  Ex. B, p. 1. The U.S. Attorney said that its FBI Agent was prohibited from attending an in-person deposition "for the duration of this national emergency."  *Id*., p. 2.  Further, the U.S. Attorney took the position that, because of the pandemic, "the FBI is currently not in a position to search for documents sought by the subpoena and to review and process them." *Ibid*.  The U.S. Attorney pointed out the very same thing that Mr. Crusius's attorneys have told this Court:  *i.e.*, that the pandemic has devastated far more than even the in-person interview process but has also severely impacted all aspects of the investigation, including document searches:

> The foregoing concerns and the unpredictable nature of this national emergency render the FBI unable to commit to a timeline for a further response to defendants' third-party discovery requests. We do not know when the FBI's discovery processing employees will be authorized to come back to work, and do not know how long it may take them to locate and review responsive documents after they resume operations. At that point, the FBI will undoubtedly also be facing a significant backlog of competing requests received before and during this time of national emergency.

*Id.*, p. 3. The Government should not be heard that the defense should have no problem obtaining records and documents from agencies which, just like the Government's agencies, have been effectively immobilized by the pandemic.

14. The Government claims that in-person attorney-client visits at the El Paso jails are allowed but ignores the facts. "Can" go to the jail and "should" go to the jail are two different things. Any person "can" play Russian roulette with a loaded gun but no person "should" do so. As of July 24, 2020, more than 200 inmates and employees at El Paso's two jails have been infected with COVID-19.[4] The Federal Public Defender has instructed its staff to not go to the El Paso jail because of the severe health and safety risks to the clients, the jail staff, and of course, the attorneys and investigators themselves. The attached Affidavit of Louis Lopez explains the types of severe risks encountered by any attorney going to the jail at this time.

---

[4] "More than 200 COVID-19 cases in El Paso County Jails," in "El Paso coronavirus update: City reports 15 COVID-19 deaths, 204 new cases," El Paso Times (online) (July 24, 2020), available at: https://www.elpasotimes.com/story/news/2020/05/27/coronavirus-el-paso-update-texas-confirmed-cases-reopenings/5265049002/?for-guid=95138c40-aeb3-11ea-925a-323c7dd10ae9&utm_source=elpasotimes-Daily%20Briefing&utm_medium=email&utm_campaign=daily_briefing&utm_term=list_article_thumb (viewed 7/24/20).

15. The Government also suggests that telephonic communication between Mr. Crusius and his counsel is sufficient, citing a recent order denying a motion to reschedule Dustin Honken's execution. Doc. 87 at 21, n. 6 (citing *United States v. Honken*, No. 01-cr-2047, Doc. 822 (S.D. Ind. July 14, 2020). The fact that Mr. Honken was denied in-person meetings with counsel near the end of the nearly 20-year pendency of his case is quite different from the instant situation, in which Mr. Crusius's defense team is being hampered at the very outset of their investigation and preparation.[5] The Declaration of Elizabeth Vertkessian, Ph.D. (Doc. 080-1), which was referenced in Mr. Crusius's motion and attached to Mr. Crusius's Status Report (Doc. 080), explains why at this stage of the proceeding, that is not an avenue that would provide even the minimum level of adequate representation.

16. The Government takes the diametrically opposed positions that COVID-19 should not have been delaying the mitigation investigation and that the pandemic is so serious that "the length of a pandemic-related delay is [ ] uncertain" and "could be very long." Doc. 087, p. 22. This Court should reject the Government's hyperbole. Mr. Crusius seeks a reasonable step towards scheduling of this case -- *i.e.*, that this matter be stayed until the parties and the Court discuss scheduling at the upcoming Status Conference.

---

[5] Notably, in *Honken*, the Government executed Mr. Honken *after* expiration of the execution warrant, rather than properly seeking new, proper authorization.

**The Government is wrong on the law**.

17.     The Government is wrong about the Constitutional rights at stake. The protocols of the Government and the Judiciary recognize Mr. Crusius's right to the assistance of counsel in the mitigation presentation that is provided for in the DOJ's Justice Manual.  Because "[d]eath penalty certification involves the most fundamental of the rights, the right to life," *United States v. Pena-Gonzalez*, 62 F. Supp. 2d 358, 363 (D.P.R. 1999), the right to counsel's effective assistance is guaranteed by both the Sixth and Fifth Amendments.  Because "the right to counsel is grounded in procedural due process, … the complete abdication of counsel at a death penalty certification hearing is, concomitantly, a denial of the defendant's due process rights." *Ibid*, citing *Powell v. Alabama*, 287 U.S. 45, 71 (1932).

18.     Contrary to the Government's criticism of the Puerto Rico cases, they were never overruled and they stand as persuasive guidance for this Court. The Sixth Amendment right to counsel attaches to the mitigation submission process because it "is of paramount importance in a capital case" which "can literally lead to a determination of life or death." *Pena-Gonzalez, supra*, 62 F.Supp.2d at 363-64 (striking death penalty certification because counsel did not attend the certification meeting); *United States v. Gomez-Olmeda*, 296 F.Supp.2d 71, 87(D.P.R. 2003) (striking the Government's notice of intent to pursue the death penalty when a combination of circumstances "rendered the DOJ meeting meaningless"). The Government's opposition to Mr. Crusius's reasonable request to discuss scheduling of the mitigation presentation at this Court's status

conference renders any death penalty certification obtained under rushed circumstances vulnerable as a violation of Mr. Crusius's due process rights.

19.     While Mr. Crusius disagrees with the Government's Sixth Amendment analysis, even if *arguendo* this Court agreed with the Government's analysis, the due process clause still exists to provide the protection he seeks.  In *Vitek v. Jones*, the U.S. Supreme Court observed that it had "repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones*, 445 U.S. 480, 488-89 (1980).  The *Vitek v. Jones* Court pointed to examples where the Court had recognized a liberty interest protected by the Due Process Clause notwithstanding the absence of a constitutional right:

> There is no 'constitutional or inherent right' to parole, *Greenholtz* v. *Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979), but once a State grants a prisoner the conditional liberty properly dependent on the observance of special parole restrictions, due process protections attach to the decision to revoke parole. *Morrissey* v. *Brewer*, 408 U.S. 471 (1972). The same is true of the revocation of probation. *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973). In *Wolff* v. *McDonnell*, 418 U.S. 539 (1974), we held that a state-created right to good-time credits, which could be forfeited only for serious misbehavior, constituted a liberty interest protected by the Due Process Clause. We also noted that the same reasoning could justify extension of due process protections to a decision to impose 'solitary' confinement because '[it] represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct.' *Id*., at 571-572, n. 19.' Once a State has granted prisoners a liberty interest, we held that due process protections are necessary 'to insure that the state-created right is not arbitrarily abrogated.' *Id*., at 557.

*Vitek v. Jones*, 445 U.S. at 488-89 (1980).  *See also Fetterly v. Paskett*, 997 F.2d 1295, 1300-01 (9th Cir. 1993)(acknowledging that, under the U.S. Constitution, laws or rules designed to assure fairness and protect the substantive rights of defendants create liberty interests, and thus give rise to indirect due process rights), *cert. denied*, 513 U.S. 914 (1994). The Fifth Circuit has stated:

> The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. . . . . A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies[.] With regard to the latter, we focus on "the nature of the deprivation" resulting from a state regulation, rather than "the language of a particular regulation."

*Wilkerson v. Goodwin*, 774 F.3d 845, 851-52 (5th Cir. 2014) (citations and internal quotation marks deleted).

20.   The Government points to a single Fifth Circuit decision, *United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009), for the proposition that the guidelines and policies in the Justice Manual do not create enforceable rights for criminal defendants. *Cooks* is not on point. In *Cooks*, the defendant belatedly, post-trial, claimed that he was deprived of due process by the prosecutors' alleged failure to consult with the Justice Department's Asset Forfeiture and Money Laundering Section. The district court refused to consider the argument because it was untimely made. On plain error review, the Fifth Circuit concluded that the defendant could not show that the prosecutors failed to follow DOJ policy. *Id*. Not only is the Court's discussion that DOJ policies do not create

enforceable rights for defendants *dicta*, the procedure at issue in *Cooks* was one in which the defendant did not participate. The DOJ's Death Penalty Protocol, on the other hand, specifically requires that the defendant be allowed to participate. Moreover, the Government more recently participated in the development of the Guideline contained in the Guide to Judicial Policy, Vol. 7, Pt. A, Ch. 6, § 670. That policy was jointly developed by representatives of the Department of Justice and Defender Services, and adopted by the Judicial Council of the United States. *See United States v. Jameson*, No. 18-CR-245-JED-7, ECF No. 338 (N.D. Okla. Dec. 23, 2019)(Doc. 085-7). That Guideline advises the district court to set a schedule for resolution of whether the Government will seek the death penalty, including a date for the defense to submit mitigating evidence to the United States Attorney. *Id.* Contrary to the Government's assertion that Mr. Crusius does not "have a cognizable right to participate" in the DOJ's capital-review process, Doc. 87, n. 6, in fact the DOJ Protocol, especially combined with the Guide to Judicial Policy, has given Mr. Crusius an expectation that he will have a reasonable opportunity to participate in the DOJ's process to determine whether or not to seek the death penalty -- the gravest penalty available -- against him. The Government is willfully violating that due process expectation.

21.     Just as the Government could not provide that benefit to only defendants whose are represented by counsel of a certain race, the Government may not provide that benefit to only defendants whose counsel and mitigation investigators are not vulnerable persons as defined in the CDC Guidelines, Texas Governor Abbott's Executive Orders, and the protocols for visitation at the El Paso County Jail.

## CONCLUSION

Perhaps the greatest failure of the Government's response is that it does not acknowledge this is a unique time, presenting unprecedented challenges to the defense and the Court, a time which requires extraordinary measures, especially when death is a possible sentence. However, the defense is not asking for an extraordinary measure, but merely a reasonable opportunity under the circumstances to participate in an orderly and fair fashion in the Government's established process to decide whether or not to seek a sentence of death, an opportunity that is within this Court's discretion and ability to manage.

Respectfully submitted this 24th day of July, 2020.

KILLMER, LANE & NEWMAN, LLP
/s/ David A. Lane
David A. Lane

David A. Lane
Colorado Bar No. 16422
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Telephone: 303-571-1000
Facsimile: 303-571-1001
Email: dlane@killmerlane.com

Cori Ann Harbour-Valdez
Texas Bar No. 24004685
The Harbour Law Firm, P.C.
1522 Montana Ave, 3rd Floor
El Paso, TX 79902
Tel: 915-544-7600
Facsimile: 915-975-8036
Email: cori@harbourlaw.net

Rebecca L. Hudsmith
Louisiana Bar No. 07052
Office of the Federal Public Defender for the Western and Middle Districts of La.
102 Versailles Boulevard, Suite 816
Lafayette, LA 70501
Tel: 337-262-6336 / Facsimile: 337-262-6605
Email: rebecca_hudsmith@fd.org

Jane Fisher-Byrialsen
Colorado Bar No. 49133
Law Firm of Fisher & Byrialsen
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
Tel: 202-256-5664
Email: jane@fblaw.org

| | |
|---|---|
| Kathleen McGuire<br>Colorado Bar No. 24686<br>The McGuire Law Office, LLC<br>P.O. Box 2008<br>Littleton, CO 80161<br>Tel: 303-921-9983<br>Facsimile: 720-306-7165<br>Email: kmcguire@kathleenmcguirelaw.com | Louis E. Lopez, Jr.<br>Texas Bar No. 00787923<br>Attorney at Law<br>416 N. Stanton Fourth Floor, Suite 400<br>El Paso, TX 79901<br>Tel: 915-543-9800<br>Facsimile: 915-543-9804<br>Email: llopez@lelopezlaw.com |

**Attorneys for Mr. Patrick Crusius**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 24th day of July 2020, I caused the foregoing *REPLY* and its EXHIBIT to be filed with the Clerk of the Court using the CM/ECF system that will serve all other parties entitled to service and notice.

 */s/ Cori A. Harbour-Valdez*
 Cori Harbour-Valdez