IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CAUSE NO. EP: 20-CR-00389-DCG |
| | § | |
| PATRICK WOOD CRUSIUS, | § | |
|   Defendant. | § | |

MEMORANDUM IN SUPPORT OF
DEFENSE'S PROPOSED SCHEDULING ORDER

COMES NOW PATRICK WOOD CRUSIUS by and through undersigned counsel and files the following Memorandum in Support of his Proposed Scheduling Order:

On January 18, 2022, the Court entered its Order, wherein it ordered the parties to "meet and confer regarding a join proposed scheduling order." ECF No. 221. Further, the Court ordered that, "[t]o the extent parties cannot reach an agreement on the proposed dates—though they should make every effort to do so—the parties shall provide their respective desired dates." *Id*.

Pursuant to this Order, the parties met various times, exchanged various draft scheduling orders, and attempted to reach an agreement on proposed dates. Despite these efforts, the parties were unable to agree on specific dates to propose to the Court. Therefore, concurrent with this Memorandum, the Defense filed its Proposed Scheduling Order, which includes its "desired dates."

Defendant now files the instant Memorandum to detail the reasons for its proposed dates. First, the Defense maintains that its proposed scheduling order better balances efficiency with comprehensive analysis when considering the issues likely to arise in the instant case. Second, the Defense's proposal better follows the average timeline in less-complicated federal capital cases. Third, and finally, the Defense raises specific objections to the Government's proposal.

Page 1 of 11

1. **The Defense Proposed Scheduling Order Provides Adequate Time for Efficient, Comprehensive Analysis of Pre-Trial Issues Presented in this Case**

As an initial matter, the Defense refers to, and incorporates as if set forth fully below, the reasons and arguments it proffered in its "Ex Parte and Sealed Response to the Court's Suggested Trial Date," filed on December 27, 2021. Defense continues to maintain its preference for the March 2025 trial commencement date.

Not much time separates the Government's proposal from the Defense's proposal. For example, the Government's first deadline for "Defense discovery motions" is February 1, 2022; then, it schedules jury selection to begin on March 6, 2023. This amounts to 11 months between the two deadlines. The Defense proposal sets its first discovery motions deadline "104 weeks before trial," which amounts to 24 months. Based on this comparison, only 11 months separate the position of the parties in this case.

The reason for the 11-month difference is that the Defense proposal considers the time necessary to resolve issues. The Defense proposal factors into account, not only the filing deadline for motions, but also the responses, the replies, the hearings, and the time it might take the Court to consider the motion. This last step is vital because the succeeding phases of the case depend on the Court's ruling in preceding phases. Further, the last step attempts to provide a reasonable time for the Court, its law clerks, and staff to schedule, coordinate, research, and draft its orders and opinions.

The separation between motions practice and judicial rulings makes the process significantly more efficient. The Government's proposal collapses the two distinct aspects of the case, which will only necessity future motions to continue, motions for extension of time, and motions for leave to amend the scheduling order. To prevent these delays, the Defense proposal

builds in the requisite timing, thereby making the actual, de facto litigation of the case substantially more efficient.

Finally, the Defense proposal is chronologically constructed to build the conceptual phases of the case. That is, the initial phase concerns the provision of discovery and motions practice related to what has, and what has not, been produced. Once discovery concerns are addressed and ruled upon, then the litigation moves to focus on the pleadings and constitutional issues. The final phase directly concerns trial and its prerequisites. This ordering builds the foundation, prior to setting the capstone. Such a process is far more efficient, conserves judicial resources, and mitigates the risk of future amendment to the scheduling order.

**2. The Timeframe Proposed by the Defense is Similar to Those Followed in Other, Less Complicated Capital Cases**

Should this matter proceed to trial as a capital case, the necessary pre-trial proceedings will be more complicated than most federal capital cases. Yet, the Government proposes a pre-trial timeframe that is shorter than those that took place in several less complicated proceedings, all of which were managed by experienced federal judges. The Defense has selected four representative trial proceedings as examples. In all four cases, local United States Attorney Offices were assisted by members of the Department of Justice Capital Case Section. They are:

1. *United States v. Larry Lujan*, *et al.*, Case No. 2:05-cr-00927-RB, District of New Mexico: In this multiple defendant case, the Government sought death against one defendant responsible for the murders of three victims. Docket entries show the following time frames:

    July 10, 2007 Third Superseding Indictment, Docket No, 145;

    July 12, 2007 Notice of Intent to Seek Death Penalty, Docket No. 146; and

    June 20, 2011 Jury Selection Day 1, Docket No. 937.

2. *United States v. John McCluskey, et al.*, Case No. 1:10-cr-02734-JCH-JHR, District of New Mexico:  In this multiple defendant case, the Government sought death against one defendant responsible for the deaths of two victims.  Docket entries show the following time frames:

    December 29, 2010 Redacted Indictment, Docket No. 24;

    January 26, 2012 Notice of Intent to Seek Death Penalty, Docket No. 275; and

    July 22, 2013 Jury Selection Begins, Docket No. 1135.

3. *United States v. Jessie Con-Ui,* Case No. 3:13-cr-00123-ARC, Middle District of Pennsylvania: In this case, the Government sought death against one Bureau of Prisons prisoner for the murder of a correctional officer. Docket entries show the following time frames:

    June 25, 2013 Indictment, Docket No. 1;

    October 2, 2014 Notice of Intent to Seek Death Penalty, Docket No. 355; and

    April 24, 2017 Jury Selection Begins, Docket No. 1026.

4. *United States v. Gary Watland,* Case No. 1:11-cr-00038-JLK-CBS, District of Colorado:  In this case, the Government sought death against one Bureau of Prisons prisoner for the murder of another prisoner.  Docket entries show the following time frames:

    January 25, 2011 Indictment, Docket No. 1;

    March 11, 2011 Notice of Intent to Seek Death Penalty, Docket No. 25; and

    February 5, 2014 Plea Agreement, Docket No. 1542.

Time frames in these cases (approximately three or more years) support the Defense's approach to an efficient use of judicial resources and thorough analysis of pre-trial issues.  These courts

focused initially on completing discovery before attempting to fashion orders on legal challenges or evidentiary limitations. Actual trial procedures were developed, for the most part, after the courts held numerous hearings and shaped the parameters of the parties' respective evidentiary presentations. As shown by the docket entries in these cases, a pretrial litigation process of three years in a case as complicated as that presented by the instant indictment is not only reasonable but also necessary to efficient utilization of court resources and thorough analysis of legal issues presented. Finally, and briefly, these examples are all pre-COVID, where litigation proceeded without the health and safety restrictions currently in place.

3. **Specific Objections to Requirements in Government Proposal.**

In its Proposed Scheduling Order, the Government asks the Court to impose a "deadline for defendant to raise issues of competency." In addition, the Government asks the Court to direct that "[i]n the event that no motion is filed, the defense shall file an *ex parte* declaration under seal explaining why." The Defense objects to both provisions and neither should be included in the scheduling order ultimately issued by the Court. First, it is inappropriate to impose a deadline after which the Defense may no longer raise the matter of Defendant's competency to stand trial because counsel is constitutionally and statutorily required to notify the Court whenever they have reason to doubt that their client remains fit to proceed, regardless of the stage of the proceeding at which it arises.

Pursuant to the Due Process Clause of the Fifth Amendment, a defendant may raise the issue of his competency to stand trial at any juncture, including after the trial itself has begun. *See Drope v. Missouri*, 420 U.S. 162, 181, 183 (1975) (finding reversible error where trial court refused to adjudicate defendant's competency mid-trial when he attempted suicide, noting that "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert

to circumstances suggesting a change that would render the accused unable to meet the standards of competency to stand trial"); *see also* 18 U.S.C. § 4241(a) ("At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . the defendant . . . may file a motion for a hearing to determine the competency of the defendant"). Imposing a deadline after which the defense may not raise the question of Defendant's competence if the evidence requires it would therefore be inconsistent with constitutional and statutory guarantees. These rules recognize the indisputable fact that symptoms of mental illness, and consequently a defendant's fitness to stand trial, can wax and wane over time.

Second, requiring counsel to provide a declaration explaining why they are not raising the issue of competency would violate the attorney-client privilege, the work-product doctrine and counsel's ethical obligations under the Texas Disciplinary Rules of Professional Conduct. "The attorney-client privilege prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice." *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976). The privilege also bars disclosure of covered communications "between non-lawyers who . . . had been employed as agents of an attorney," such as mental health experts. *Id.* "The work-product doctrine 'insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witness's statements.'" *Adams v. Memorial Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (quoting *Dunn v. State Farm Fire and Cas. Co.,* 927 F.2d 869, 875 (5th Cir. 1991)). "It protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney." *Id.*

With limited exceptions irrelevant here, Texas Disciplinary Rule of Professional Conduct 1.05(b) forbids a lawyer from disclosing confidential information regarding a client. Confidential

information includes information subject to the lawyer-client privilege of Rule 503 of the Texas Rules of Evidence, R. 1.05(a), which includes not only communications between the lawyer or her agents and the client but also, in criminal cases, "any other fact that came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney client relationship." TEX. R. EVID. 503(b)(2). Rule 1.05(a) separately bars disclosure of such information by including within its definition of confidential information "all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client."

The Government does not elaborate on the scope of the declaration that it is proposing the Court require the Defense to file, and counsel have never seen such a request made in any other case, but presumably the Government contemplates an explanation by counsel of why, at the time of filing, the evidence they have fails to give rise to reasonable cause to believe that their client's competency is in doubt. *See Drope*, 420 U.S. at 172-73 (holding constitutional a procedure for adjudicating competency whenever there is reasonable cause to doubt that defendant "'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him'") (quoting *Dusky v. United States*, 362 U.S. 402 (1960)); 18 U.S.C. § 4241(a) (requiring adjudication where there is "reasonable cause to believe that the defendant may be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assistant properly in his defense").

Complying with such a requirement in any meaningful way would require counsel to divulge, at least: conversations with their client and between their client and their mental health

experts that are covered by attorney client privilege; their own research, observations and mental impressions and likely conversations with their experts and other witnesses about the client's mental condition that are covered by the work product doctrine; and the content of historical and background materials on the client, such as medical records, that is confidential under Texas Disciplinary Rule of Professional Conduct 1.05(b). None of this material may be disclosed when a client is competent.

The Government's proposal is akin to a preemptive request for a declaration from trial counsel in a post-conviction proceeding explaining the factual, legal, and strategic basis for declining to raise the issue of the defendant's competency to stand trial.  In the post-conviction setting, *if* the defendant has raised a claim of ineffective assistance of trial counsel for failing to raise his competency to stand trial, he *may* be deemed to have waived applicable privileges and trial counsel's disclosures may be compelled. *See, e.g., Johnson v. Alabama*, 256 F.3d 1156, 1178-79 (11th Cir. 2001) (citing *Laughner v. United States*, 373 F.2d 326 (5th Cir. 1967)).  Here, of course, Mr. Crusius has yet to be tried, let alone convicted.  No rule of law permits the Government to secure an affidavit prophylactically, when there is no question of a waiver of the applicable privileges.

Next, the scheduling orders proposed by both parties include a date by which the Defense will, if it intends to introduce expert mental health evidence at the guilt/innocence or sentencing trials, provide notice of that intent, under Federal Rule of Criminal Procedure 12.2. Both sides agree that, if the Defense intends to introduce such evidence, it will give the Government the notice due under the Rule.

The Government's proposal, however, also wades deep into the substance of matters that should (and, given the defense lack of consent, would have to) be litigated only if and when the

Defense provides such notice, including, for example, the content of the defense notice and procedures governing any government rebuttal evaluation of Defendant. As an initial matter, the Government's proposals sweep beyond both the 12.2's plain text requirements and well-settled case law. *See* FED. R. CRIM. P. 12.2(c)(1)(B) (following defense notice, "the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court") (emphasis added); *see also, e.g., United States v. Johnson*, 362 F. Supp. 2d 1043, 1079-80, 1081 (D. Iowa 2005) (rejecting government's request that defense, provide, along with its notice of intent, broad discovery concerning its mental-health evidence); *United States v. Sampson*, 335 F. Supp. 2d 166, 242, 243 (D. Mass. 2004) (same). In any event, the Defense believes it is premature—well before the Defense has completed the necessary life-history and mental-health investigations, prerequisites to any decision about introducing evidence at either stage of the trial—and beyond the scope of a scheduling order to attempt to resolve what will be, if they even arise, contested issues. Accordingly, the defense proposal has built in adequate time between the defense notice and the completion of any government rebuttal evaluation, for briefing and a hearing to resolve these and other issues at a more appropriate time.

### Prayer

WHEREFORE PREMISES CONSIDERED, Defendant prays that the Court receive this Memorandum and that the Court adopt the Defense's Proposed Scheduling Order. Defendant prays that the Court grant this request and for all things, to which Defendant is entitled, in both equity and law.

Respectfully submitted,

/s/ Joe A. Spencer
JOE A. SPENCER
1009 Montana
El Paso, Texas 79902
(915) 532-5562
joe@joespencerlaw.com
State Bar of Texas No. 18921800

REBECCA L. HUDSMITH
LA Bar No. 7052
Office of the Federal Public
Defender for the Middle and
Western Districts of Louisiana
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
(337) 262-6336
Facsimile: (337) 262-6605
Rebecca_hudsmith@fd.org

MARK STEVENS
310 S. St. Mary's Street
Tower Life Building, Suite 1920
San Antonio, TX 78205
(210) 226-1433
State Bar No. 1918420
mark@markstevenslaw.com

FELIX VALENZUELA
P.O. Box 26186
El Paso, Texas 79926
(915) 209-2719
State Bar No. 24076745
felix@valenzuela-law.com

***Attorneys for Patrick Crusius***

## CERTIFICATE OF SERVICE

I hereby certify that on, February 15, 2022, a true and correct copy of the foregoing instrument was filed with the Clerk of the Court using the CM/ECF system, which will transmit notification of such filing to all interested parties.

/s/ Joe A. Spencer, Jr.