UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| *Plaintiff,* § | |
| § | EP-20-CR-00389-DCG |
| v. § | |
| § | |
| PATRICK WOOD CRUSIUS, § | |
| § | |
| *Defendant.* § | |

**OBJECTIONS TO PUBLIC DISCLOSURE OF SEALED, *EX PARTE* PLEADINGS AND RELATED MATTERS CONCERNING APPOINTED COUNSEL**

NOW INTO COURT, through undersigned counsel, comes PATRICK WOOD CRUSIUS, who hereby files his objections, pursuant to the Fifth, Sixth and Eighth Amendments to the U.S. Constitution and 18 U.S.C. §§ 3005 and 3599(a), and in the interests of justice, to the public disclosure of sealed, *ex* parte pleadings, including motions, orders, minutes and transcripts, filed in this prosecution concerning the appointment and compensation of private attorneys and expert service providers.

**Relevant Procedural History**

On February 6, 2020, the federal Government filed a 90-count indictment against Mr. Crusius charging him with death penalty-eligible crimes as the result of the mass shooting on August 3, 2019, at a Walmart located in El Paso, Texas. ECF No. 1. On July 9, 2020, a 90-count superseding indictment issued against the defendant again charging him with death penalty-eligible federal crimes. ECF No. 82. On January 17, 2023, the Government filed a notice that it would not seek the death penalty in this case. ECF No. 254. On February 8, 2023, Mr. Crusius was rearraigned pursuant to a plea agreement whereby he pled guilty to all 90 counts of the

1

indictment.  ECF Nos. 259-261.  An Amended Judgment In A Criminal Case was entered on October 5, 2023, reflecting the 90 consecutive life sentences imposed by this Court on July 7, 2023, as well as restitution to the victims in the amount of $6,238,845.55.  ECF No. 306.

Undersigned counsel Joe A. Spencer, Jr., Mark Stevens, Felix Valenzuela, and Rebecca Hudsmith, all learned in the law applicable to capital cases, were appointed by this Court to represent Mr. Crusius in connection with this federal death penalty-eligible prosecution. Private counsel Mr. Spencer, Mr. Valenzuela and Mr. Stevens, who also have been appointed to represent Mr. Crusius in the pending Texas state court death penalty prosecution against him, have been paid for their work defending Mr. Crusius in federal court pursuant to federal judicial policy as reflected in the *Guide to Judiciary Policy*, Vol. 7:  Defender Services. [1]

**The Nature of the Federal District Court Sealed Pleadings and Related Matters at Issue**

The process by which counsel is appointed in a federal death-penalty eligible prosecution is governed by the provisions of 18 U.S.C. Section 3599, the *Guide to Judiciary Policy*, Vol 7: Defender Services, the Plan for Representation on Appeal under the Criminal Justice Act (Fifth Circuit Plan), Section 7.B.2., and the Amended Western District of Texas CJA Plan Revised April 13, 2023), Section XIV.  The sealed pleadings at issue, submitted *ex parte*, concern the appointment of qualified counsel and the service providers needed to assist them, in this death-penalty eligible prosecution, the proposed budgets for compensation of counsel and service providers, and related orders, minutes and transcripts of the District Court and orders of the Circuit

---

[1] Originally, private counsel appointed to represent Mr. Crusius included David A. Lane, Cori Ann Harbour-Valdez, Jane Fisher-Bryialsen, Kathleen McGuire, and Louis E. Lopez, Jr., along with Ms. Hudsmith.  Each of these private attorneys ceased representing Mr. Crusius by September of 2020, after which time private counsel Mr. Spencer, Mr. Stevens and Mr. Valenzuela were appointed, along with Ms. Hudsmith. The objection to disclosure of sealed pleadings concerning attorney appointment and budget issues herein applies as well to these private counsel and any expert service providers they were Court-authorized to hire.

Court, in addressing these submissions. The pleadings submitted *ex parte* and under seal in support of the need for qualified death penalty counsel and the compensation needed to support their work necessarily reflect detailed information as to defense litigation strategies and concerns, attorney work-product and other privileged and sensitive matters in justification. The pleadings filed in connection with issues involving appointed counsel and related matters in this death-penalty eligible prosecution are necessarily filed in the case itself, but properly filed under seal and *ex parte*, without any input from the Office of the United States Attorney prosecuting the case. Rather, the input comes from those within the judiciary, who regularly comply with the relevant statutory authorities and judicial policies, including the District Court and Chief Circuit Court Judges, the Circuit Case Budgeting Attorney, the Federal Public Defender for the Western District of Texas, and the National Federal Death Penalty Resource Counsel. The same applies to sealed court orders and any minutes and transcripts reflecting these issues.

Once counsel are appointed for an indigent defendant in a federal death-penalty eligible case, and a budget for payment of counsel is approved by the federal courts, payments to private counsel for their work as court-appointed counsel is made through the Federal District Court's non-public eVoucher system, which is separate from the CM/ECF District Court case filing system and PACER. [2]

**Applicable Statutory Provisions**

The statutory provisions specific to the appointment and funding of the indigent defense function in a Federal death penalty case can be found at 18 U.S.C. Section 3599(a). This

---

[2] The process applicable to appointed private counsel regarding budgeting for and payment of attorney fees and expenses does not apply to Ms. Hudsmith, who is the Federal Public Defender for the Middle and Western Districts of Louisiana and who is a full-time federal judiciary employee. Moreover, as an agency within the judiciary branch, the FPD office is not subject to the Freedom of Information Act nor the Privacy Act, referenced herein.

section governs the appointment of counsel in criminal prosecutions in which a defendant is charged with a crime which may be punishable by death, and the defendant is financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services. Subsections (b), (c) and (d) provide for the qualifications of counsel appointed under Section 3599. Subsection (e) defines the scope of appointed counsel's representation of the defendant.

Subsection (f) provides that the Court may authorize appointed private counsel to obtain investigative, expert, or other services, where found to be reasonably necessary for the representation of the defendant, and shall order payment of such fees and expenses, which proceedings, communications, or requests may be *ex parte* on a proper showing of the need for confidentiality.

Subsections (g)(1) and (2) of Section 3599 provide for the hourly rate at which private counsel appointed under the Section are paid and the limits on the payment of investigative, expert, and other reasonably necessary services, unless approved by the Chief Judge of the federal Circuit Court. Subsection (g)(3) of Section 3599 provides that "amounts paid under this paragraph for services in any case shall be disclosed to the public, after the disposition of the petition."

**Provisions of the *Guide to Judiciary Policy***

Volume 7, Pt.A, Chapter 5 of the *Guide to Judiciary Policy* provides guidelines generally regarding the public disclosure of information pertaining to activities under the Criminal Justice Act (CJA), 18 U.S.C. Section 3006A, and related statues. At the outset, Section 510.20 provides that neither the Freedom of Information Act, (5 U.S.C. Section 552) nor the Privacy Act (5 U.S.C. Section 552a) applies to the judiciary, and "neither is applicable to requests for release to the public of records and information pertaining to activities under the CJA and related statues."

4

Section 510.30 provides with respect to limitations on disclosure of information on CJA-related activities that such information which is not otherwise routinely available to the public should be made available *unless* it:

(a) Is judicially placed under seal;

(b) Could reasonably be expected to unduly intrude upon the privacy of attorneys or defendants;

(c) Could reasonably be expected to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources; or

(d) Otherwise adversely affect the defendant's right to the effective assistance of counsel, a fair trial, or an impartial adjudication.

Section 520.10(b) provides for only the disclosure of *payments* to counsel and further provides that "[f]or capital cases, disclosure must be **after** the disposition of the petition for habeas corpus." (emphasis in original). Furthermore, Section 520.20(b) provides that "*[d]ocumentation* submitted in support of, or attached to, payment *may not be disclosed at any time*." (emphasis added). The same principles apply to the timing of disclosure of payments to service providers. Section 530.

The *Guide to Judiciary Policy*, Vol. 7, Pt. A, Ch. 6: Federal Death Penalty and Capital Habeas Corpus Representations, Section 640 governs case budgeting, which is required in all capital cases. According to Section 640.20(b), "[c]ase budgets should be submitted *ex parte* and *filed and maintained under seal*." (emphasis added). Section 650.20(d) provides that the "budget should be incorporated into a sealed initial pretrial order that reflects the understandings

5

of the court and counsel regarding all matters affecting counsel compensation and reimbursement and payments for investigative, expert, and other services."

**Legal Authorities Relative to Issues of Public Disclosure of Sealed Matters**

In *June Medical Services, L.L.C. v. Phillips*, 22 F.4th 512, 512-515 (5th Cir. 2022), the Fifth Circuit vacated a district court's order in a civil case brought by an abortion clinic and three doctors who provide abortions, who sought to seal information that could jeopardize their privacy and the privacy of their staffs. According to the Court, the district court's order "sealing and ordering redaction of voluminous documents without a proper legal basis," included such publicly available information as a transcript of proceedings held in open court, a famous Pennsylvania grand jury report that is available as a book on the Amazon website, an arrest report from a police department's website, articles from *The New York Times* and *Rolling Stone*, and an obituary from a public website. *Id.* at 515. In vacating the district court's sealing order, the Court noted that judicial records belong to the American people, and they are public, not private documents. *Id.* at 519. Additionally, the Court distinguished the *discovery stage*, where parties are exchanging information pursuant to a valid protective order from the *adjudicative stage*, when materials enter the record, and the standard for shielding records from public view is far more arduous, requiring a stricter balancing test. *Id.* at 521. According to the Court, with regard to judicial records, the working presumption is that they should not be sealed, and the district court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure. *Id.*

In the context of criminal prosecutions, the Supreme Court has provided guidance as to the existence of a qualified First Amendment right of public access to criminal trials and certain preliminary proceedings in criminal cases. *See Press-Enterprise Co. v. Superior Court*,

478 U.S. 1 (1986) (*Press-Enterprise II*) (right of access to preliminary hearings).  The opinion sets forth a two-step analytical framework to be followed:  first, the court determines whether a qualified First Amendment right of access attaches to a particular criminal trial related process and, if so, then the court determines whether closure services a compelling interest.  The first step emphasizes two complimentary considerations, which should be separately analyzed on the threshold question of whether the First Amendment right of access even attaches. *Id.* at 8.  The court first considers whether the place and process have historically been open to the press and general public.  *Id.* Then, the court considers whether public access plays a significant positive role in the functioning of the particular process in question.  *Id.*  If these two "considerations of experience and logic" favor disclosure, a qualified First Amendment right of access applies to a particular criminal trial related process.  *Id.* at 9.  If, applying these tests, a qualified First Amendment right is found to exist, the right may be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*) (right of access to jury selection).

In *United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998), the Tenth Circuit was presented with the issue whether the press has a constitutional, common law, or statutory right of access to court-sealed fee, cost and expense applications and related information filed under the Criminal Justice Act, 18 U.S.C. Section 3006A, by court-appointed criminal defense attorneys, as well as transcripts from hearings and court orders concerning those applications.  Assuming that the analysis of *Press-Enterprise II* applied to the documents at issue, the Court concluded that there is no First Amendment right of access to CJA-related backup documentation, motions, orders and hearing transcripts.  *Id.* at 1261.  With respect to a common law right of access, the Court

7

concluded that the CJA statutory scheme supplants any common law right of access, and CJA materials are not "judicial materials" as that term is used by courts that have applied the common law right of access and are, instead, administrative documents to which there is not right of access under the common law.  *Id.* at 1263.

**The Sealed Status of Pleadings and Related Documents and Matters Concerning the Appointment and Budgets of Counsel Must Be Maintained**

The Fifth Circuit's holding in *June Medical Services, L.L.C.* that the public has a common law right of access to judicial records does not govern in the present context.  Rather, Section 3599 and judiciary policy as set forth in the *Guide to Judiciary Policy* govern and make clear that public disclosure of information with regard to court-appointed counsel is limited to the amount of the payments made through the eVoucher system to appointed private counsel, or to any service providers hired by private counsel after approval by the Courts, and does not include any documentation in support, including case budget motions and orders.  Moreover, the *earliest* that such disclosure of payments can be made is after the disposition of any habeas corpus petition filed by the defendant as a federal prisoner.  Furthermore, according to Section 510.30 of the *Guide to Judiciary Policy*, a decision on public disclosure must be guided by consideration of the adverse impact of the public disclosure on the defendant's constitutionally guaranteed rights to the effective assistance of counsel and to a fair trial, in this case, in connection with the pending Texas state court death penalty prosecution against Mr. Crusius.  Any such adverse impact would weigh against public disclosure of the sealed matters at issue.

Notably, despite the broad sweep of the Court's language in *June Medical Services, L.L.C.*, it was not a death penalty prosecution in which disclosure of information concerning the appointment and payment of private counsel is governed by Section 3599 and the *Guide to Judiciary Policy*, and the Court makes no reference to the appropriate legal standard for sealing

documents in the present context. Moreover, the sealed documents at issue here are not public information filed under seal, but information filed both *ex parte* and under seal that is not otherwise publicly available.

Additionally, the sealed pleadings at issue in this case, while necessarily filed in the court record, are not "judicial records" in the sense that they are neither the part of the *discovery stage* nor the *adjudicative stage* of this prosecution. As noted in *Gonzales*, 150 F.3d at 1254-55, the process relied upon by the federal courts to appoint counsel in criminal cases is administrative in nature. The guidelines for appointment and payment of counsel are generated by the Administrative Office of the U.S. Courts under authority granted by the Judicial Conference of the United States. Therefore, the guidelines are purely administrative, and the court acts essentially as an administrative, not a judicial, capacity when it approves requests for appointment of counsel and related motions for trial assistance. *Id.* The administrative nature of the process of appointment of counsel is apparent in that the process is non-adversarial, and the court acts *ex parte*. *Id.* at 1255. The documents are not used at trial to show the guilt or innocence of the defendant and are not evidence of anything and are, thus, entirely ancillary to the trial. *Id.*

Furthermore, the two "considerations of experience and logic" set forth in *Press-Enterprise II* do not favor disclosure or a qualified First Amendment right of access to the sealed, e*x parte* pleadings and related matters at issue. With respect to the experience consideration, certain aspects of criminal proceedings, such as criminal trials, have traditionally been open to the public throughout this country's history, while other aspects, such as grand jury proceedings, have not. There is no historical tradition of open public access to documents submitted by a defendant relative to appointment of counsel or a budget for appointed counsel. *See United States v. Lexin*, 434 F.Supp.2d 836, 851 (S.D. Ca. 2006) (finding a defendant's personal financial information

9

submitted in support of appointment of counsel should be sealed and not subject to public disclosure) ("Applying the experience factor, the court finds no historical tradition of open public access to documents submitted by a defendant in support of a request for appointment of counsel."). *See also United States v. Gonzales*, 150 F.3d at 1258 (the Court concludes "that no history, experience or tradition of access exists as to the release at any time of backup documentation, motions, orders, and hearing transcripts regarding requests for CJA assistance.") Such documents are peripheral to the defendant's trial, and the process of appointing counsel for a financially eligible defendant and budgeting for counsel's work on the case is a non-adversarial, *ex parte* process closed to the prosecution.

The logic consideration seeks to determine "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. The determinations relative to appointment and funding of counsel for an indigent defendant do not implicate the merits of a criminal case. *See United States v. Lexin*, 434 F.Supp.2d at 852 ("The determination of whether a defendant is eligible for appointed counsel does not implicate judicial power or the meris of the criminal case."). Nor does access to such information serve the need of the public to have a full understanding necessary to serve as an effective check on the judicial system. *Id.* at 853 (under the logic consideration standard, "the positive role [of public access] in the functioning of the appointment of counsel process is, at best, minimal" and "could actually play a negative, rather than a positive, role"). *See also United States v. Gonzales*, 150 F.3d at 1258-59 (the Court concludes that "public access to the backup documentation, motions, orders, and hearing transcripts will not play *a significant positive* role in the functioning of the CJA process" and, in fact, access would play "a *negative* role in the process.").

10

Simply put, neither the common law right of access to judicial records outlined in *June Medical Services, L.L.C.* nor the qualified First Amendment right of access to criminal trials and proceedings recognized in *Press-Enterprise II* require or support the unsealing of the sealed, *ex parte* matters relating to the appointment of counsel and their budgets. To the contrary, the statutory provision of Section 3599 and the *Guide to Judiciary Policy* governing court-appointed counsel matters mandate that these pleadings, orders, minutes, transcripts and underlying documentation remain sealed.

WHEREFORE, defendant PATRICK WOOD CRUSIUS, through undersigned counsel, respectfully prays that this Court, pursuant to the Fifth, Sixth and Eighth Amendments to the U.S. Constitution and 18 U.S.C. §§ 3005 and 3599(a), and in the interests of justice, maintain the sealed, *ex parte* status of the pleadings, including motions, orders, minutes and transcripts, filed in this prosecution concerning the appointment and compensation of private attorneys and expert service providers.

Respectfully submitted,

/s/ Joe A. Spencer
JOE A. SPENCER
1009 Montana
El Paso, Texas 79902
(915) 532-5562
joe@joespencerlaw.com
State Bar of Texas No. 18921800

REBECCA L. HUDSMITH
LA Bar No. 7052
Office of the Federal Public Defender for the Middle and Western Districts of Louisiana
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
(337) 262-6336
Facsimile: (337) 262-6605
Rebecca_hudsmith@fd.org

MARK STEVENS
310 S. St. Mary's Street
Tower Life Building, Suite 1920
San Antonio, TX 78205
(210) 226-1433
State Bar No. 1918420
mark@markstevenslaw.com

FELIX VALENZUELA
701 Magoffin Avenue
El Paso, Texas 79901
(915) 209-2719
State Bar No. 24076745
felix@valenzuela-law.com

***Attorneys for Patrick Crusius***

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on this 14th day of November, 2023, a true and correct copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF System through which all parties entitled to service and notice will be served.

/s/Rebecca L. Hudsmith