UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | EP-20-CR-00389-DCG |
| v. | § | |
| | § | |
| PATRICK WOOD CRUSIUS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S REPLY IN OPPOSITION TO THE MOTON TO INTERVENE
AND TO UNSEAL JUDICIAL RECORDS FILED BY EL PASO MATTERS
AND TO THE MOTION TO UNSEAL FILED BY THE GOVERNMENT**

NOW INTO COURT, through undersigned counsel, comes PATRICK WOOD CRUSIUS, who hereby files his reply in opposition to the Motion to Intervene and to Unseal Judicial Records, ECF No. 311, filed by El Paso Matters and the Motion to Unseal, ECF No. 308, filed by the Government in this numbered cause.

**Relevant Procedural History**

On February 6, 2020, the federal Government filed a 90-count indictment against Patrick Crusius charging him with death penalty-eligible crimes as the result of the mass shooting on August 3, 2019, at a Walmart located in El Paso, Texas. ECF No. 1. On July 9, 2020, a 90-count superseding indictment issued against the Defendant again charging him with death penalty-eligible federal crimes. ECF No. 82. On January 17, 2023, the Government filed a notice that it would not seek the death penalty in this case. ECF No. 254. On February 8, 2023, the Defendant was rearraigned pursuant to a plea agreement whereby he pled guilty to all 90 counts of the indictment. ECF Nos. 259-261. An Amended Judgment In A Criminal Case was entered on October 5, 2023, reflecting the 90 consecutive life sentences imposed on the Defendant by this

1

Court on July 7, 2023, as well as an order of restitution to the victims in the amount of $6,238,845.55. ECF No. 306.

Undersigned counsel Joe A. Spencer, Jr., Mark Stevens, Felix Valenzuela, and Rebecca Hudsmith, all learned in the law applicable to capital cases, were appointed by this Court to represent Patrick Crusius in connection with this federal death penalty-eligible prosecution. Private counsel Mr. Spencer, Mr. Valenzuela and Mr. Stevens also have been appointed to represent him in the pending Texas state court death penalty prosecution.[1]

**The Motion to Intervene and Unseal Judicial Records Filed by El Paso Matters**

El Paso Matters, a nonprofit media organization, has filed a motion for leave to file a motion to intervene in this case for the limited purpose of challenging closure and the sealing of orders in this case. ECF No. 311 and 311-2. According to its motion to intervene, El Paso Matters supports the motion of the Government, ECF No. 308, to unseal the following sealed documents: ECF Nos. 73, 233, 234, 235, 246, 247, 248, 249 1, 2, 3 and sealed attachments 1-4 to ECF Nos. 72 and 73. ECF No. 311-2, p. 1. El Paso Matters also "seeks to unseal all other sealed judicial records in this case," including: ECF Nos. 118, 118-1, 118-2, 118-3, 127-28, 168, 170, 184, 244, 244-1, 245, 250, 250-1, 251, 253, 260, 266-1, 266-2, 267-71, and 282 (hereinafter "Sealed Records"). ECF No. 311-2, pp. 1-2. According to El Paso Matters, "the Sealed Records in this case should be unsealed in their entirety or with, at most, only limited redactions necessitated by a compelling interest." ECF No. 311-2, p. 2. In addition, El Paso Matters seeks the unsealing of

---

[1] Originally, private counsel appointed to represent the Defendant included David A. Lane, Cori Ann Harbour-Valdez, Jane Fisher-Bryialsen, Kathleen McGuire, and Louis E. Lopez, Jr., along with Ms. Hudsmith. Each of these private attorneys ceased representing Mr. Crusius by September of 2020, after which time private counsel Mr. Spencer, Mr. Stevens and Mr. Valenzuela were appointed, along with Ms. Hudsmith. Defendant's objections herein to the unsealing of any sealed pleadings concerning attorney appointment and budget issues applies as well to these private counsel.

Sealed Records that include what it has described as sentencing documents (ECF Nos. 260, 266-1, 266-2 and 268); legal briefs (ECF Nos. 118, 118-1, 118-2, 118-3, 127, 168, 244, 244-1, 245, 250, 250-1, and 270); court orders (ECF Nos. 128, 170, 184, 251, 253, 267, 269, 271, and 282); and any missing docket entries and their underlying records (ECF Nos. 2, 8-10, 14-16, 25, 29-35, 43-49, 51-53, 56-59, 61-64, 67-69, 75-78, 83, 97-117, 119-25, 129-46, 149-51, 153-55, 162, 167, 169, 171, 174-79, 189-94, 229-32, 262-65, and 283). ECF No. 311-2 p. 6 and footnotes 3, 4, 5 and 6.

Defendant acknowledges that courts have allowed news media to intervene in criminal matters for the limited purpose of challenging restrictions on access to court records and proceedings. *See Hearst Newspapers, L.L.C. v. Cardenas-Guillen*, 641 F.3d 168, 172-73 (5th Cir. 2011), cited by El Paso Matters, ECF No. 311-2, p. 7.

According to El Paso Matters, while acknowledging that it has "reported extensively" on this matter, nevertheless argues that "the extensive sealing of judicial records in this case . . . has significantly hindered" its coverage and the public's understanding of the case. ECF No. 311-2, p. 4. Further, the motion asserts that the public "knows little about the details of Crusius' attack" and does not "have an understanding of why the Government decided not to seek the death penalty in this case" and whether Crusius' "documented mental illness was a factor in the Government's decision." ECF No. 311-2, pp. 4, 6. El Paso Matters asserts that it seeks access to the Sealed Records "to provide the public with a more fulsome picture of how Crusius was prosecuted and sentenced for his crimes." ECF No. 311-2, pp. 4, 6.

In essence, El Paso Matters seeks the unsealing of all sealed pleadings filed in this federal prosecution of the defendant and does so while the State of Texas continues with its death penalty

prosecution of Patrick Crusius in the state courts in El Paso. Defendant objects to this request, as set forth more fully below.

**The Motion to Unseal filed by the Government**

The Government has moved to unseal certain documents that it filed under seal, and related Court orders. These include the attachments 1, 2, 3 and 4 to ECF No. 72; ECF No. 73 and the attachments 1, 2, 3 and 4, and ECF Nos. 233, 234, 246 and 248, and related Court orders, ECF Nos. 235, 247 and 249. ECF No. 308, p. 3. According to the Government, "since the referenced cause number has now been concluded," it sees "no further reason" to have these documents sealed. Defendant objects to this request, as set forth more fully below.

**The Nature of the Federal District Court Sealed Pleadings**

The vast majority of the sealed pleadings in this matter are filed not only under seal, but also *ex parte,* and, thus, are unavailable even to the federal prosecutors. This is because they concern issues related to the initial appointment of counsel and related Court orders, the budgets for payment of appointed counsel and related Court orders, the status of appointed defense counsel and related Court orders and hearings, and the withdrawal of certain appointed defense counsel and the appointment of new counsel and related Court orders.[2]

Beyond appointed counsel issues, several sealed pleadings, some filed *ex parte*, concern issues relative to discovery and defense strategies,[3] and several sealed pleadings concern sentencing issues, which pleadings were placed under seal without a request from either party.[4] As set forth below, none of the sealed pleadings should be unsealed.

---

[2] *See, e.g.,* ECF Nos. 9-10, 14-16, 18, 43-49, 56-59, 61-64, 67-69, 76-78, 97-146, 149-151, 153-155, 162, 171, 174-179, 262-265, and 283.
[3] *See, e.g.,* ECF No. 73 and attachments 1, 2, 3 and 4 to ECF No. 72, ECF Nos. 167-170, 184-185, 201-216, 229-232, 233-235 (Government filings), 244-253 (including Government filings and related orders, ECF Nos. 246-249), 266-271, and 282.
[4] *See, e.g.,* ECF Nos. 260 (addendum to plea agreement), 275 (presentence investigation report), 281 (statement of reasons for sentence), 297 and 298 (addendums to sealed presentence investigation report); 302 (sealed

4

**The Rules Governing *Ex Parte*, Sealed Pleadings Related to Appointed Counsel**

The process by which counsel is appointed and paid in a federal death-penalty eligible prosecution is governed by the provisions of 18 U.S.C. Section 3599; the *Guide to Judiciary Policy*, Vol 7: Defender Services; the Plan for Representation on Appeal under the Criminal Justice Act (Fifth Circuit Plan), Section 7.B.2.; and the Amended Western District of Texas CJA Plan (Revised April 13, 2023), Section XIV. Chapter 5 of the *Guide to Judiciary Policy* sets forth general guidelines regarding the public disclosure of information pertaining to activities under the Criminal Justice Act (CJA), 18 U.S.C. Section 3006A, and related statues. At the outset, Section 510.20 provides that neither the Freedom of Information Act, (5 U.S.C. Section 552) nor the Privacy Act (5 U.S.C. Section 552a) applies to the judiciary, and "neither is applicable to requests for release to the public of records and information pertaining to activities under the CJA and related statues." Furthermore, Section 520.20(b) provides that "*[d]ocumentation* submitted in support of, or attached to, payment *may not be disclosed at any time*." (emphasis added).[5]

Section 640 of the *Guide to Judiciary Policy*, which governs case budgeting in federal death penalty cases, provides in 640.20(b), "[c]ase budgets should be submitted *ex parte* and *filed and maintained under seal*." (emphasis added). Section 650.20(d) provides that the "budget should be incorporated into a sealed initial pretrial order that reflects the understandings

---

supplemental attachment to sealed presentence investigation report); 302 (sealed statement of reasons for amended judgment)

[5] Additionally, Section 510.30 provides with respect to limitations on disclosure of information on CJA-related activities that such information which is not otherwise routinely available to the public should be made available *unless* it:
    (a) Is judicially placed under seal;
    (b) Could reasonably be expected to unduly intrude upon the privacy of attorneys or defendants;
    (c) Could reasonably be expected to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources; or
    (d) Otherwise adversely affect the defendant's right to the effective assistance of counsel, a fair trial, or an impartial adjudication.

5

of the court and counsel regarding all matters affecting counsel compensation and reimbursement and payments for investigative, expert, and other services."

**Legal Standards Regarding Public Disclosure of Sealed Matters in Criminal Prosecutions**

El Paso Matters seeks the public disclosure of all sealed documents in this criminal prosecution based upon both a qualified First Amendment right of public access and a qualified common law right of access to judicial records. ECF No. 311-2, pp. 6 and 10. El Paso Matters acknowledges that "the Fifth Circuit has not had occasion to expressly address the issue" of whether the qualified First Amendment right of access also applies to judicial records in criminal prosecutions, as opposed to criminal proceedings. ECF No. 311-2, p. 7.

With respect to the qualified First Amendment right of public access in the context of criminal prosecutions, the Supreme Court has provided guidance as to the existence of a qualified First Amendment right of public access to criminal trials and certain preliminary proceedings in criminal cases. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise II*) (right of access to preliminary hearings). The opinion sets forth a two-step analytical framework to be followed: first, the court determines whether a qualified First Amendment right of access attaches to a particular criminal trial related process and, if so, then the court determines whether closure serves a compelling interest. The first step emphasizes two complimentary considerations, which should be separately analyzed on the threshold question of whether the First Amendment right of access even attaches. *Id.* at 8. The court first considers whether the place and process have historically been open to the press and general public. *Id.* Then, the court considers whether public access plays a significant positive role in the functioning of the particular process in question. *Id.* If these two "considerations of experience and logic" favor disclosure, a qualified First Amendment right of access applies to a particular criminal trial

related process. *Id.* at 9. If, applying these tests, a qualified First Amendment right is found to exist, the right may be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*) (right of access to jury selection). Applying the two-part test of *Press-Enterprise II,* the Fifth Circuit has held that the public has a qualified First Amendment right of access to criminal sentencing proceedings, although recognizing that the presumption of access can be overcome based upon specific, substantive findings made by the district court that closure is necessary to protect higher values and is narrowly tailored to serve such goals. *Hearst Newspapers, L.L.C. v. Cardenas-Guillen*, 641 F.3d 168, 176-177, 181 (5th Cir. 2011).

With respect to the qualified common law right of access to documents qualifying as "judicial records," the Fifth Circuit has recognized "a general, common law right to inspect and copy public records and documents, including judicial records and documents, but that right is not absolute." *United States v. Sealed Search Warrants*, 868 F.3d 385, 391 (5th Cir. 2017). Regarding the scope of this qualified common law right of access to judicial records and its application to pre-indictment warrant materials such as affidavits, the Fifth Circuit adopted a case-by-case approach requiring that district courts exercise their discretion by balancing the public's right to access judicial documents against interests favoring nondisclosure, a decision left to the sound discretion of the trial court based on the requisite factual findings. *Id.* at 395-97. *See also June Medical Services, L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (with regard to judicial records in general, the working presumption is that they should not be sealed, and the district court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure).

In *United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998), the Tenth Circuit was presented with the issue whether the press has a constitutional, common law, or statutory right of access to court-sealed fee, cost and expense applications and related information filed under the Criminal Justice Act, 18 U.S.C. Section 3006A, by court-appointed criminal defense attorneys, as well as transcripts from hearings and court orders concerning those applications. Assuming that the analysis of *Press-Enterprise II* applied to the documents at issue, the Court concluded that there is no First Amendment right of access to CJA-related backup documentation, motions, orders and hearing transcripts. *Id.* at 1261. With respect to a common law right of access, the Court concluded that the CJA statutory scheme supplants any common law right of access, and CJA materials are not "judicial materials" as that term is used by courts that have applied the common law right of access and are, instead, administrative documents to which there is not right of access under the common law. *Id.* at 1263.

**The Sealed Status of the Pleadings Concerning the Appointment and Budgets of Counsel, Discovery Issues and Defense Strategies and Sentencing Issues Must Be Maintained**

Both the Government's motion to unseal and the motion to unseal filed by El Paso Matters fail to acknowledge that, while "the federal criminal matter in the above referenced cause number has now been concluded," ECF No. 308, p. 3, it remains that Patrick Crusius continues to face a death penalty prosecution in the Texas state courts in El Paso, one that continues to be reported on extensively by El Paso Matters and other news outlets. *See* ECF No. 311-2, p. 4. As this Court has already recognized in connection with its denial of requests for disclosure of defense costs in this federal prosecution, "releasing the total federal defense costs now would unnecessarily generate additional pre-trial publicity that could make it harder for the state court to select an impartial jury." ECF No. 312, p. 6, *citing United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000) ("Intense publicity surrounding a criminal proceeding . . . poses significant and well-known

8

dangers to a fair trial . . . [as there is] the potential that pretrial publicity may taint the jury venire, resulting in a jury that is biased toward one party or another."); *United States v. McVeigh*, 918 F.Supp. 1452, 1465 (W.D. Okla. 1996) (identifying problems that may occur when courts reveal total defense costs before a death penalty trial).

These concerns regarding the ability of the state court to select an impartial jury are even greater with respect to the requested unsealing of the sealed pleadings in this cause. The *ex parte* sealed pleadings concerning the appointment and payment of qualified counsel include pleadings in support of proposed budgets and the appointment, withdrawal and status of counsel, along with related orders, minutes and transcripts of the District Court and orders of the Circuit Court. These pleadings necessarily include detailed information as to defense litigation strategies and concerns, attorney work-product and other privileged and sensitive matters. Likewise, the *ex parte* sealed pleadings relative to discovery issues and defense strategies, and the sealed pleadings relative to defense concerns, discovery and sentencing-related issues, would also reveal sensitive defense litigation strategies.

In stark contrast to this Court's conclusion that "disclosing the non-itemized total wouldn't reveal *how* the federal defense team spent that money," so this disclosure "wouldn't compromise the defense team's strategy in the state case," ECF No. 312, p. 6, the unsealing of the sealed pleadings in this cause *would* compromise the defense team's strategy in the state case and destroy the ability of the Defendant to receive a fair trial before an impartial jury and with the effective assistance of counsel as guaranteed by the United States Constitution. On this basis, whether viewed as a qualified right to access under the First Amendment or under common law, closure is necessary to protect higher values, including the constitutional rights of the Defendant to a fair trial, an impartial jury and the effective assistance of counsel.

Moreover, with respect to the *ex parte* sealed pleadings regarding appointed attorney issues, Section 3599 and judiciary policy as set forth in the *Guide to Judiciary Policy* govern and make clear that public disclosure of information with regard to court-appointed counsel is limited, at most, to the amount of the payments made through the eVoucher system to appointed private counsel, and does not include any documentation in support, including case budget motions and orders. Furthermore, according to Section 510.30 of the *Guide to Judiciary Policy*, a decision on public disclosure must be guided by consideration of the adverse impact of the public disclosure on the Defendant's constitutionally guaranteed rights to the effective assistance of counsel and to a fair trial, in this case, in connection with the pending Texas state court death penalty prosecution against Defendant. Any such adverse impact would weigh against public disclosure of the sealed matters at issue.

Additionally, the sealed pleadings in this case regarding appointment of counsel, while necessarily filed in the court record, are not "judicial records" subject to either the qualified First Amendment right of access or the qualified common law right of access. As noted in *Gonzales*, 150 F.3d at 1254-55, the process relied upon by the federal courts to appoint counsel in criminal cases is administrative in nature. The guidelines for appointment and payment of counsel are generated by the Administrative Office of the U.S. Courts under authority granted by the Judicial Conference of the United States. Therefore, the guidelines are purely administrative, and the court acts essentially as an administrative, not a judicial, capacity when it approves requests for appointment of counsel and related motions for trial assistance. *Id.* The administrative nature of the process of appointment of counsel is apparent in that the process is non-adversarial, and the court acts *ex parte*. *Id.* at 1255. The documents are not used at trial to show the guilt or innocence of the defendant and are not evidence of anything and are, thus, entirely ancillary to the trial. *Id.*

Furthermore, the two "considerations of experience and logic" set forth in *Press-Enterprise II* do not favor disclosure or a qualified First Amendment right of access to the sealed, e*x parte* pleadings and related matters at issue. With respect to the experience consideration, certain aspects of criminal proceedings, such as criminal trials, have traditionally been open to the public throughout this country's history, while other aspects, such as grand jury proceedings, have not. There is no historical tradition of open public access to documents submitted by a defendant relative to appointment of counsel or a budget for appointed counsel. *See United States v. Lexin*, 434 F.Supp.2d 836, 851 (S.D. Ca. 2006) (finding a defendant's personal financial information submitted in support of appointment of counsel should be sealed and not subject to public disclosure) ("Applying the experience factor, the court finds no historical tradition of open public access to documents submitted by a defendant in support of a request for appointment of counsel."). *See also United States v. Gonzales* , 150 F.3d at 1258 (the Court concludes "that no history, experience or tradition of access exists as to the release at any time of backup documentation, motions, orders, and hearing transcripts regarding requests for CJA assistance.") Such documents are peripheral to the defendant's trial, and the process of appointing counsel for a financially eligible defendant and budgeting for counsel's work on the case is a non-adversarial, *ex parte* process closed to the prosecution.

The same rationale applies to the sealed sentencing pleadings. In this regard, El Paso Matters cites to caselaw supporting that sentencing proceedings should be open to the public, as well as plea agreements and legal briefs filed in connection with sentencing. *See* ECF No. 311-2 at pp. 8-10. In the present matter, the plea agreement is not under seal nor is there a legal brief in connection with sentencing – a sentencing memorandum – under seal in this case. Rather, the sealed pleadings related to sentencing are those traditionally under seal in the federal courts,

including the presentence investigation report and amendments, the Court's statement of reasons for sentence and amendments, and the addendum to the plea agreement. Moreover, the sentencing proceedings occurred over several days and were open to the public and press.

The logic consideration seeks to determine "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. The determinations relative to appointment and funding of counsel for an indigent defendant do not implicate the merits of a criminal case. *See United States v. Lexin*, 434 F.Supp.2d at 852 ("The determination of whether a defendant is eligible for appointed counsel does not implicate judicial power or the meris of the criminal case."). Nor does access to such information serve the need of the public to have a full understanding necessary to serve as an effective check on the judicial system. *Id.* at 853 (under the logic consideration standard, "the positive role [of public access] in the functioning of the appointment of counsel process is, at best, minimal" and "could actually play a negative, rather than a positive, role"). *See also United States v. Gonzales*, 150 F.3d at 1258-59 (the Court concludes that "public access to the backup documentation, motions, orders, and hearing transcripts will not play *a significant positive* role in the functioning of the CJA process" and, in fact, access would play "a *negative* role in the process.").

Simply put, neither the qualified common law right of access to judicial records nor the qualified First Amendment right of access to criminal trials and proceedings recognized in *Press-Enterprise II* require or support the unsealing of the sealed, *ex parte* matters relating to the appointment of counsel and their budgets, discovery and defense strategy issues and sentencing matters traditionally sealed by the Courts. These pleadings must remain sealed.

WHEREFORE, defendant PATRICK WOOD CRUSIUS, through undersigned counsel, respectfully prays that this Court, pursuant to the Fifth, Sixth and Eighth Amendments to the U.S. Constitution and 18 U.S.C. §§ 3005 and 3599(a), and in the interests of justice, deny the motion of intervenor El Paso Matters to unseal all sealed pleadings in this case and the deny the motion of the Government to unseal the pleadings it has identified, and maintain the sealed status of all pleadings at issue in this matter, including motions, orders, minutes and transcripts, concerning the appointment and compensation of private attorneys and expert service providers and reflecting defense strategies and sentencing issues traditionally filed under seal.

Respectfully submitted,

/s/ Joe A. Spencer
JOE A. SPENCER
1009 Montana
El Paso, Texas 79902
(915) 532-5562
joe@joespencerlaw.com
State Bar of Texas No. 18921800

REBECCA L. HUDSMITH
LA Bar No. 7052
Office of the Federal Public Defender for the Middle and Western Districts of Louisiana
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
(337) 262-6336
Facsimile: (337) 262-6605
Rebecca_hudsmith@fd.org

MARK STEVENS
310 S. St. Mary's Street
Tower Life Building, Suite 1920
San Antonio, TX 78205
(210) 226-1433
State Bar No. 1918420
mark@markstevenslaw.com

FELIX VALENZUELA
701 Magoffin Avenue
El Paso, Texas 79901
(915) 209-2719
State Bar No. 24076745
felix@valenzuela-law.com

***Attorneys for Patrick Crusius***

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that on this 8th day of March, 2024, a true and correct copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF System through which all parties entitled to service and notice will be served.

/s/Rebecca L. Hudsmith