RECEIVED
NOV 22 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § § | |
| | § | No. 3:20-CR-00389 |
| PATRICK WOOD CRUSIUS, | § § | (The Honorable David C. Guaderrama) |
| | § § | |
| Defendant. | § § | |

## MOTION TO INTERVENE AND TO UNSEAL JUDICIAL RECORDS

El Paso Matters, a nonprofit media organization focused on in-depth and investigative reporting about the El Paso and Paso del Norte region, hereby seeks to intervene in this matter to obtain an order unsealing judicial records. In support thereof, El Paso Matters respectfully shows the Court as follows:

### SUMMARY OF THE ARGUMENT

On November 2, 2023, the United States (the "Government" or "prosecution") filed a motion to unseal the following sealed documents in the above-captioned case: ECF Nos. 73, 233, 234, 235, 246, 247, 248, 249 1, 2, 3, and sealed attachments 1–4 to ECF Nos. 72 and 73. *See* ECF No. 308. As detailed herein, Proposed Intervenor El Paso Matters—a nonprofit news organization focused on in-depth and investigative reporting about the El Paso and Paso del Norte region—agrees with the Government's argument that those judicial records should be promptly unsealed. Further, El Paso Matters also seeks to unseal all other sealed judicial records in this case, including

1

the following: ECF Nos. 118, 118–1, 118–2, 118–3, 127–28, 168, 170, 184, 244, 244–1, 245, 250, 250–1, 251, 253, 260, 266-1, 266-2, 267–71, and 282 (hereinafter the "Sealed Records").[1]

Pursuant to the First Amendment and the common law right of access, the Sealed Records in this case should be unsealed in their entirety or with, at most, only limited redactions necessitated by a compelling interest. El Paso Matters should be permitted to intervene for the limited purpose of challenging closure and the sealing orders in this case.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

Defendant Patrick Wood Crusius ("Defendant") pled guilty to 90 federal charges after he opened fire in an El Paso Walmart in August 2019, killing 23 people and wounding 22 others. ECF No. 82. Defendant initially entered a plea of "not guilty" in 2020, ECF No. 89, and the case proceeded toward trial. On January 17, 2023, the prosecution filed a notice stating that "the Government will not seek the death penalty in the instant case." ECF No. 254. Defendant moved for rearraignment four days later and changed his plea to "guilty" on February 8, 2023. ECF No. 261. The addendum to the plea agreement is sealed. ECF No. 260. Defendant's guilty plea and the Government's decision not to seek the death penalty received national attention. *See, e.g.*, Emily Schmall, *Man Pleads Guilty to Hate Crimes in El Paso Massacre That Killed 23*, N.Y. Times (Feb. 8, 2023), https://perma.cc/BR6S-RYCX; Robert Moore, Ramon Bracamontes & Cindy Ramirez, *Feds won't seek death penalty against alleged Walmart gunman*, El Paso Matters (Jan. 17, 2023), https://perma.cc/5JCJ-XWGB.

Defendant's sentencing hearing took place on July 5, 6, and 7, 2023. *See* ECF No. 272; ECF Nos. 277–79. On July 7, 2023, Defendant was sentenced to 90 consecutive life terms in prison. ECF No. 280; *see also* Edgar Sandoval, *Gunman in El Paso Mass Shooting Sentenced for*

---

[1] Since many entries are missing from the public docket, *see infra* note 6, this list may be under-inclusive. Because of that, El Paso Matters also seeks to unseal the missing docket entries.

*Federal Hate Crimes*, N.Y. Times (July 7, 2023), https://perma.cc/QM9N-B2FX. On October 5, 2023, this Court entered an amended judgment in Defendant's case to include the parties' agreed-upon restitution. ECF No. 306. Thereafter, on November 2, the prosecution filed a motion to unseal several—but not all—sealed motions filed by the Government in this matter and the Court's corresponding orders. ECF No. 308 (moving to unseal ECF Nos. 73, 233, 234, 235, 246, 247, 248, 249 1, 2, 3, and sealed attachments 1–4 to ECF Nos. 72 and 73)

El Paso Matters has reported extensively on the above-captioned matter. *See, e.g.*, Robert Moore & Priscilla Totiyapungprasert, *Man who killed 23 at El Paso Walmart pleads guilty to hate crimes*, El Paso Matters (Feb. 8, 2023), https://perma.cc/ZN6K-42LK; René Kladzyk, *Should the Walmart shooter get the death penalty? El Paso is divided*, El Paso Matters (July 30, 2021), https://perma.cc/XX6G-ASRY; Robert Moore & Priscilla Totiyapungprasert, *Racist mass killer formally sentenced to 90 life prison terms for El Paso carnage*, El Paso Matters (July 7, 2023), https://perma.cc/MF94-2SJN. Though it has endeavored to report on this case as thoroughly as possible, the extensive sealing of judicial records in this case, which include transcripts of proceedings, has significantly hindered El Paso Matters' coverage and the public's understanding of how this case proceeded. For example, the public, to this day, knows little about the details of Crusius' attack. Nor does the public have an understanding of why the Government decided not to seek the death penalty in this case. Though sentencing proceedings revealed publicly for the first time that Crusius suffers from mental illness, Moore & Totiyapungprasert, *Racist mass killer formally sentenced to 90 life prison terms for El Paso carnage, supra*, it is unclear whether this documented mental illness was a factor in the Government's decision. El Paso Matters seeks access to the Sealed Records to provide the public with a more fulsome picture of how Crusius was prosecuted and sentenced for his crimes.

Discovery in the above-captioned matter was subject to a protective order entered by the Court on February 14, 2020. ECF No. 39. According to the unopposed motion filed by the prosecution, the protective order was necessary "to protect the dignity and privacy of the victims, witnesses, and their family members," to "ensure a fair trial," and to "ensure that sensitive information [was] treated properly by both federal and state parties." ECF No. 26 at 3–5 (capitalization altered).[2]

Two provisions of the protective order state that the following types of documents are to be filed under seal and remain under seal until otherwise ordered by the Court: "[a]ny discovery material that the defense team files with the Court in connection with pre-trial motions, trial, or other matters before the Court" and "any discovery material the defense team files with any Court or tribunal in connection with post-conviction matters, or any matters before any Court or tribunal." *Id.* at 10–11.

Many documents were filed under seal after entry of the protective order, including motions, exhibits, and court orders—some filed by the Defendant, some by the prosecution, and some by the Court itself. The numbering of docket entries also reflects several gaps, suggesting that there may be additional sealed records for which no information is provided on the public docket. *See, e.g.*, ECF Nos. 42, 50 (missing docket entries 43–49). For that reason, El Paso Matters cannot identify with certainty all of the Sealed Records in this matter.

El Paso Matters agrees with the Government that the sealed judicial records addressed in its November 2 motion to unseal should be unsealed. El Paso Matters also respectfully seeks an

---

[2] For legal authority, the prosecution relied primarily on Federal Rule of Criminal Procedure 16(d), which states that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). The prosecution also cited the Crime Victims' Rights Act, 18 U.S.C. § 3771, which gives crime victims the right to be "reasonably protected from the accused," *id.* § 3771(a)(1), and "treated with fairness and with respect for [their] dignity and privacy," *id.* § 3771(a)(8).

order from the Court unsealing the remaining Sealed Records, which include sentencing documents,[3] legal briefs,[4] court orders,[5] and any missing docket entries and their underlying records,[6] not captured by the Government's pending unsealing request. *See* ECF No. 308.

## STANDARD OF REVIEW

Members of the news media have standing to challenge court orders when those orders impede their ability to gather news and receive protected speech. *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996). Judicial records are presumptively open to the public under the First Amendment and the common law. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *In re Hearst Newspapers, LLC*, 641 F.3d 168, 176 (5th Cir. 2011) ("*Hearst Newspapers*"); *United States v. Raybould*, 130 F. Supp. 2d 829, 833 (N.D. Tex. 2000). Proceedings and documents to which the public's qualified First Amendment right of access applies may be closed or sealed only if—and only to the extent—such closure or sealing is necessary to serve a compelling government interest. *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"). Where only the common law presumption of access applies, district courts have discretion to seal judicial records, but such discretion "is to be exercised charily" and only after considering the public's interest in access. *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987). Both the common law and First Amendment rights of access require that a court considering closure or sealing conduct an on-the-record analysis explaining why the public's interest in access to the specific proceeding or record is overcome and that closure or sealing is no broader than necessary to serve the compelling

---

[3]     *See, e.g.*, ECF Nos. 260, 266-1, 266-2, and 268.
[4]     *See, e.g.*, ECF Nos. 118, 118–1, 118–2, 118–3, 127, 168, 244, 244–1, 245, 250, 250–1, and 270.
[5]     *See, e.g.*, ECF Nos. 128, 170, 184, 251, 253, 267, 269, 271, and 282.
[6]     *See, e.g.*, ECF Nos. 2, 8–10, 14–16, 25, 29–35, 43–49, 51–53, 56–59, 61–64, 67–69, 75–78, 83, 97–117, 119–25, 129–46, 149–51, 153–55, 162, 167, 169, 171, 174–79, 189–94, 229–32, 262–65, and 283.

interest(s) identified by the court. *See June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022); *Hearst Newspapers*, 641 F.3d at 181.

## ARGUMENT

I. **El Paso Matters' Motion to Intervene Should Be Granted.**

Under well-established Fifth Circuit precedent, members of the news media may intervene in criminal matters for the limited purpose of challenging restrictions on access to court records and proceedings. *See, e.g., Hearst Newspapers*, 641 F.3d at 172–73 (noting that the court below granted media intervenor's motion to intervene for the purpose of asking the court to unseal court records and challenging closure of court proceedings); *see also United States v. Aldawsari*, 683 F.3d 660, 664–65 (5th Cir. 2012) (reversing district court's denial of journalist's motion to intervene for purpose of challenging gag order on case participants).

El Paso Matters clearly has standing to challenge the continued sealing of the Sealed Records in the above-captioned criminal prosecution. The Fifth Circuit has concluded that where a court's closure or sealing orders "impede . . . news agencies' abilities to gather the news and to receive protected speech," the requirements for standing are satisfied. *Davis*, 78 F.3d at 927. Because the sealing of records in this case has impeded and is continuing to impede El Paso Matters' ability to gather news and report on this case, including reporting on how this matter was prosecuted and why the Government did not seek the death penalty, El Paso Matters has standing to move to unseal the Sealed Records. Its motion to intervene for that limited purpose should, accordingly, be granted.

II. **The Sealed Records Should Be Unsealed.**

    A. **The First Amendment Guarantees the Press and Public a Presumptive Right of Access to the Sealed Records.**

Said to predate even the Constitution itself, the public's right of access to criminal

proceedings is deeply rooted in American history and is "an indispensable attribute" of our criminal justice system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564–69 (1980). Such openness "enhances . . . the basic fairness of the criminal trial," as well as "the appearance of fairness so essential to public confidence in the system." *Press-Enterprise I*, 464 U.S. at 508. "This rationale" applies fully in the context of sentencing, which is "'an integral part of a criminal prosecution.'" *Hearst Newspapers*, 641 F.3d at 177 (quoting *United States v. Alcantara*, 396 F.3d 189, 197 & n.7 (2d Cir. 2005)).

"[T]wo complementary considerations" govern whether a particular judicial proceeding or court document is subject to the First Amendment presumption of access. *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 8–9 (1986) ("*Press-Enterprise II*"). The first is whether it is the type of judicial proceeding or record that has "historically been open to the press and general public." *Id.* (explaining that a "tradition of accessibility implies the favorable judgment of experience[]" (citations omitted)). The second is "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

The Fifth Circuit has expressly held that the public has a qualified First Amendment right of access to criminal proceedings, including sentencing proceedings. *See Hearst Newspapers*, 641 F.3d at 176–77, 179 (noting that "openness in the sentencing context allows the public to observe whether the defendant is being justly sentenced, especially where the court, rather than a jury, is determining the sentence"). Though the Fifth Circuit has not had occasion to expressly address the issue, all other federal circuit courts of appeals to consider it have determined that the qualified First Amendment right of access also applies to judicial records in criminal matters. *See, e.g.*, *United States v. DeJournett*, 817 F.3d 479, 481 (6th Cir. 2016); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005); *In re Providence J. Co.*, 293 F.3d 1, 10 (1st Cir. 2002);

7

*United States v. Graham*, 257 F.3d 143, 147 (2d Cir. 2001); *United States v. Smith*, 123 F.3d 140, 146 (3d Cir. 1997); *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986); *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825 (9th Cir. 1985).

In particular, "courts of appeals have . . . recognized a First Amendment right of access to documents filed for use in sentencing proceedings," *Hearst Newspapers*, 641 F.3d at 176 (collecting cases), as well as plea agreements, *see DeJournett*, 817 F.3d at 485 (finding that "plea agreements are the quintessential judicial record, entitled to the protection of the First Amendment right to public access of judicial records"); *Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (finding that First Amendment right of access applies to plea agreements); *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1466 (9th Cir. 1990) (finding that First Amendment right of access applies to plea agreements and related documents); *In re Wash. Post Co.*, 807 F.2d at 390 (finding that First Amendment right of access applies to "documents filed in connection with plea hearings and sentencing hearings").[7]

Similarly, numerous federal courts of appeals have found that docket sheets and docket entries are subject to the First Amendment right of access. *See, e.g., Pellegrino*, 380 F.3d at 91; *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993); *In re State-Rec. Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam). Indeed, absent access to docket sheets, "the ability of the public

---

[7] In addition to applying the *Press-Enterprise II* framework to determine whether the constitutional presumption of access applies to specific judicial records, certain federal courts of appeals also look to the connection between the judicial records at issue and the proceeding to which they relate. For example, the Second Circuit has found a First Amendment right of access to court records where access is a "necessary corollary" of the public's right to attend the proceeding. *See, e.g., Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164–65 (2d Cir. 2013) (citation omitted); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (recognizing a constitutional right of access to judicial documents that "are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings'" (citation omitted)); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004); *see also United States v. Antar*, 38 F.3d 1348, 1359–60 (3d Cir. 1994) (finding that First Amendment right of access to voir dire proceedings "encompasses equally the live proceedings and the transcripts which document those proceedings" and explaining that "[i]t would be an odd result indeed were we to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door?").

and press to attend civil and criminal cases would be merely theoretical" and the presumptive right of the press and the public to inspect judicial documents would likewise be frustrated. *Pellegrino*, 380 F.3d at 93–94.

And numerous courts have also held that the First Amendment right extends to court orders in both civil and criminal matters. *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014) (finding "little difficulty in concluding" that "the First Amendment right of access extends to a judicial opinion"); *United States v. Doe*, 962 F.3d 139, 146 (4th Cir. 2020) ("[A] court order denying a sentence reduction [] is likely encompassed by the First Amendment right of access."); *Hardy v. Equitable Life Assurance Soc'y of U.S.*, 697 F. App'x 723, 725 (2d Cir. 2017) ("The First Amendment also creates a presumption of public access that likewise attaches to court orders."); *see also Union Oil Co. of Cal. V. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain.").

Finally, courts of appeals also have recognized that the constitutional right of access attaches to legal briefs, including motions filed in connection with sentencing. *See In re Providence J. Co.*, 293 F.3d at 4–5 (holding that briefs are presumptively public under the First Amendment because they "contain the substance of a movant's argument or a nonmovant's opposition: pertinent facts, case law, statutory references, and legal reasoning"); *see also In re Krynicki*, 983 F.2d 74, 75–77 (7th Cir. 1992) (noting that, "by constitutional command," "briefs themselves, including all of the legal argument, belong in the public domain"); *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) (holding constitutional right of access attaches to "briefs and memoranda").

Where the qualified First Amendment right applies, sealing is proper only if it is found to be necessitated by a compelling government interest and no broader than necessary to serve that

interest. *Press-Enterprise I*, 464 U.S. at 510; *Hearst Newspapers*, 641 F.3d at 181. Thus, to close a proceeding or seal a judicial record to which the First Amendment right of access applies, a district court must set forth written findings demonstrating that such closure or sealing is necessary, including an explanation as to why less-restrictive alternatives to such closure or sealing—like redaction—would not suffice. *Press-Enterprise I*, 464 U.S. at 510; *Hearst Newspapers*, 641 F.3d at 181; *United States v. Hitt*, 473 F.3d 146, 154 (5th Cir. 2006) (emphasizing that courts "must consider reasonable alternatives to closure").

**B.      El Paso Matters Also Has a Qualified Common Law Right of Access to the Sealed Records.**

The public also enjoys a presumptive right of access to judicial records under the common law. *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon*, 435 U.S. at 597). Like the constitutional right of public access, the common law right "promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) (citing *Van Waeyenberghe*, 990 F.2d at 849). "These salutary effects . . . support public access to sentencing memoranda" and other documents that "bear directly on criminal sentencing in that they seek to influence the judge's determination of the appropriate sentence." *United States v. Kravetz*, 706 F.3d 47, 56–57 (1st Cir. 2013).

The common law right of access applies to all documents that qualify as "judicial records." *Van Waeyenberghe*, 990 F.2d at 848. The Fifth Circuit has applied the common law right to a wide range of documents created by or filed with courts. *See, e.g., Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021) (holding the common law right of access applies to "[l]egal arguments, and the documents underlying them"); *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 225–27 (5th Cir. 2020) (finding that common law right of access applies to recording of

meeting following settlement conference and meeting minutes about the conference); *Sealed Search Warrants*, 868 F.3d at 390 (pre-indictment search warrant materials); *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (district court's order and opinion); *Van Waeyenberghe*, 990 F.2d at 848–49 (final order of permanent injunction; transcript of parties' oral report on settlement conference).

Further, as the late Judge McBryde in the Northern District of Texas explained, in holding the common law right applicable to a motion for downward departure in sentencing, "[i]f those aspects of a criminal case were to be kept secret, the public and the press would have reason to question the trustworthiness of the judicial process and whether judicial and prosecutorial abuses might be occurring." *Raybould*, 130 F. Supp. 2d at 833.

The sealing in this case is extensive, with even the Court's orders sealing records hidden from the public eye. And because some of the docket entries are hidden from the public, El Paso Matters cannot determine whether it has identified all of the Sealed Records with specificity. To the extent that the gaps in docket entries reflect documents that are sealed and unavailable to the public, however, the common law extends the public a presumptive right to inspect those docket entries, which provide "a 'kind of index to judicial proceedings,'" *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1129 (D.C. Cir. 2020) (quoting *Pellegrino*, 380 F.3d at 93), in addition to the underlying documents themselves. Any party seeking such extensive sealing bears a heavy burden in seeking to demonstrate that sealing is warranted.

In applying the common law right of access, the Fifth Circuit has instructed lower courts "[to] be ungenerous with their discretion to seal judicial records." *Binh Hoa Le*, 990 F.3d at 418; *see also Blain*, 808 F.2d at 399 ("The district court's discretion to seal the record of judicial

11

proceedings is to be exercised charily[.]"). And, in determining whether records subject to the common law right should be sealed, either in whole or in part, a district court must take into consideration the public's interest in access to the documents. *See BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211–12 (5th Cir. 2019). "[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *June Med. Servs.*, 22 F.4th at 520 (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)).

### C. The First Amendment and Common Law Rights of Access to the Sealed Records Have Not Been Overcome.

The public docket does not contain a sealing order, except to the extent that, "[p]ractically speaking," the Court's entry of the unopposed protective order submitted by the prosecution in this case "doubles as the court's sealing order." *Binh Hoa Le*, 990 F.3d at 420 n.39. However, the mere agreement of the parties is not enough to "satisfy the stringent sealing-order standard." *Id.* at 417–18. Further, the protective order offers "no document-by-document inquiry," "no grappling with public and private interests," "no consideration of less drastic alternatives," and "no assurance that the extent of sealing [is] congruent to the need." *Id.* at 420. In sum, the available record fails to establish a compelling interest in favor of continuing to withhold the Sealed Records, in their entirety, from the public. Any compelling interest that may have existed while the case was ongoing is no longer present now that sentencing and restitution proceedings have concluded. The prosecution's November 2 motion to unseal its briefs and this Court's corresponding orders, which El Paso Matters agrees should be granted, only underscores the fact that, even if secrecy may have been justified while this case was ongoing, it is no longer justified. ECF No. 308.

In contrast, the public interest in this criminal case—which arises from the 2019 shooting at a Walmart in El Paso that left 23 people dead and 22 others injured—cannot be overstated. The

horrendous nature of the shooting and the tragic loss of life and grief endured by the El Paso community captured the attention of the entire nation. And the prosecution's controversial decision not to seek the death penalty was the subject of widespread debate. *See, e.g.*, Moore et al., *Feds won't seek death penalty against alleged Walmart gunman*, *supra*; Associated Press, *Walmart Shooting Suspect to Plead Guilty to Federal Charges*, NBC–DFW (Jan. 24, 2023), https://perma.cc/TPM3-ZPVQ.

There is a particularly powerful public interest in access to the sentencing memoranda filed in this case, which were utilized by the Court to determine the Defendant's sentence. For example, the prosecution announced that it would not seek the death penalty without any public explanation for that decision. ECF No. 254. To the extent the sentencing memoranda explain the prosecution's reasons for not seeking the death penalty, the public has a vital interest in knowing those reasons.

There is likewise strong public interest in a more complete understanding as to how this case proceeded prior to Defendant's sentencing. "Dispositive documents," like the legal briefs filed by the parties in this case "that influence[d] or underpin[ned a] judicial decision," are of particular public interest. *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 890 (S.D. Tex. 2008). So too are "documents authored or generated by the court itself in discharging its public duties, including opinions, orders, judgments, [and] docket sheets"—documents included among the Sealed Records in this case. *Id.* at 891.

The public also has a significant interest in understanding what happened on the day of the shooting. Because so many records in this case are sealed, it has been hard to put together a complete timeline of events even four years after the shooting. Access to these records would facilitate community catharsis after this tragedy. Access only to those judicial records addressed by the Government's November 2 motion to unseal would provide an incomplete and slanted

picture of these proceedings, since that motion seeks to unseal only the prosecution's own filings and this Court's corresponding orders.

For these reasons, the public's interest in the Sealed Records in this case is particularly strong. No compelling or countervailing interest warrants continued, wholesale sealing of the judicial records in this case. Accordingly, all records should be unsealed.

### III. To the Extent Continued Sealing of the Sealed Records Is Necessary, Such Sealing Must Be Narrowly Tailored and Supported by Specific, On-the-Record Findings.

Even if the Court finds that a compelling interest necessitates the continued sealing of some portion of the Sealed Records, such as protecting the privacy rights of victims, any such restrictions on public access must be no greater than necessary to serve that interest. *See Press-Enterprise I*, 464 U.S. at 510. Less restrictive alternatives should be employed when possible, including redaction of documents in lieu of wholesale sealing. *See id.*; *Hitt*, 473 F.3d at 154. Further, any such sealing or closure must be supported by specific, on-the-record factual findings sufficient to allow a reviewing court to determine whether the sealing or closure was proper. *See Press-Enterprise I*, 464 U.S. at 510; *Sealed Search Warrants*, 868 F.3d at 397 n.5. Such findings have not been made by the Court in this case.

### CONCLUSION AND PRAYER

For the reasons set forth above, El Paso Matters requests that the Court enter an order requiring the Clerk of the Court to unseal the Sealed Records in the above-captioned matter.

Dated: November 21, 2023

Respectfully submitted,

*/s/ Amanda N. Crouch*

Amanda N. Crouch
State Bar No. 24077401
JACKSON WALKER LLP
1900 Broadway, Suite 1200
San Antonio, TX 78215
Phone: 210.978.7784
acrouch@jw.com

*/s/ Katie Townsend*

Katie Townsend*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel for Proposed Intervenor El Paso Matters*

*\* Pro hac vice application pending*

## **CERTIFICATE OF CONFERENCE**

I certify that I contacted Ian Hanna, counsel for the United States in this matter, and Joe Spencer, counsel for Defendant, via e-mail on November 16, 2023, to ascertain their clients' position on the relief sought by this Motion. The United States takes no position on this Motion and the defense opposes it.

*/s/ Amanda N. Crouch*

Amanda N. Crouch
*Counsel for El Paso Matters*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed on November 21, 2023. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Amanda N. Crouch*

Amanda N. Crouch
*Counsel for El Paso Matters*

RECEIVED
NOV 22 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> § <br> v.  § <br> § <br> PATRICK WOOD CRUSIUS, § <br> § <br> Defendant. § | No. 3:20-CR-00389 <br> (The Honorable David C. Guaderrama) |

### [PROPOSED] ORDER

Upon consideration of the Motion to Unseal filed by the United States of America (the "Government") and the Motion to Intervene and Unseal filed by El Paso Matters, any opposition(s) thereto, and the entire record herein, it is hereby **ORDERED** that:

1. El Paso Matters' motion to intervene for the limited purpose of seeking access to sealed pleadings, records, and files in the above-captioned case is **GRANTED**;

2. The Government's motion to unseal the judicial records identified as ECF Nos. 73, 233, 234, 235, 246, 247, 248, 249 1, 2, 3, and sealed attachments 1–4 to ECF Nos. 72 and 73 is **GRANTED**;

3. El Paso Matters' motion to unseal the remaining sealed judicial records in this matter, including, specifically, those identified as ECF Nos. 118, 118–1, 118–2, 118–3, 127–28, 168, 170, 184, 244, 244–1, 245, 250, 250–1, 251, 253, 260, 266-1, 266-2, 267–71, and 282 is **GRANTED**; and

4. The clerk is directed to place on the public docket a copy of all previously sealed judicial records in this matter.

1

**SO ORDERED.**

_____
Hon. David C. Guaderrama
United States District Judge